Nathan R Sobel, J.
This defendant, convicted and sentenced in 1956, now seeks in this coram nobis proceeding to vacate the judgment of conviction on the ground that unconstitutionally seized evidence was used on the trial to convict him. He appealed the judgment of conviction but his appeal was dismissed for failure to prosecute. I have examined the minutes of trial. Although the issue of search and seizure was not fully explored, it is clear that the seizure was unreasonable and in violation of the State and Federal Constitutions. Since this was a pre-Mapp conviction, it may also be assumed that on the constitutional issue, the appeal would have been unsuccessful.
A general objection was taken to the admission of the evidence. (Cf. People v. O’Neill, 11 N Y 2d 148.) O’Neill discusses the general objection on appeal — not in connection with post-conviction remedies.
I.
We have here a clear-cut issue whether coram nobis is available as a post-conviction remedy to vacate a conviction on what was then constitutional evidence but which would now be unconstitutional evidence by Mapp v. Ohio (367 U. S. 643) standards; and where the remedy of appeal from the conviction would have afforded no relief.
Confronted with a similar fact situation, I held in People v. Figueroa (220 N. Y. S. 2d 131) decided soon after Mapp, that it was the intention of the Supreme Court to impose the “ exclusionary rule” as a constitutional command upon the States, prospectively only. I said:
“ Prior to Wolf v. People of State of Colorado, 338 U. S. 25 * * * it had never been certain whether the exclusionary rule as applied in the Federal courts was a constitutional command of the Fourth Amendment or a rule of evidence adopted by the Supreme Court in its supervisory capacity over the Federal courts.
“ Wolf resolved all doubts in that regard. Wolf stated that the exclusionary rule was a constitutional command to the Federal courts.
“ With respect to the States the Court held that the Fourth Amendment’s protection against unreasonable search and seizure has been ‘ absorbed ’ into the Fourteenth and is therefore a restraint against the States. It thus held that the security of one’s privacy against arbitrary intrusion by the police is implicit in the concept of ordered liberty and is therefore one of *585 the specifics of the Bill of Rights which is enforceable against the States under the Due Process Clause.
‘ ‘ But despite the holding that the ‘ exclusionary rule ’ was a constitutional command of the Fourth to the Federal courts, the Wolf court refused to hold that it was a command of the Due Process Clause to the States.
‘ ‘ After considering other sanctions available to the citizen against State officials violating the right of privacy — criminal prosecution, civil suit for trespass, Federal civil right suits — the Court in Wolf concluded that the ‘ contrariety of views of the States ’ on the adoption of the exclusionary rule was ‘ particularly impressive ’; therefore it could not ‘ brush aside the experience of States which deem the incidence of such conduct * * * too slight to call for a deterrent remedy * * * by overriding the [States’] relevant rules of evidence ’.
“ As summed up briefly in Mapp, the holding in Wolf with respect to the exclusionary rule was —
“ ‘ The [Wolf] Court decided that the Weeks exclusionary rule would not then be imposed upon the States as an ‘ essential ingredient of the right.’ (Italics mine.) [367 U. S. 643, 81 S. Ct. 1689.]
“ Thus the decision in Wolf as construed by Mapp was that the Court decided it was not necessary at that time to impose the ‘ exclusionary rule ’ upon the States.
“ To make the holding clearer, between Wolf and Mapp the Court in Elkins v. United States, 364 U. S. 206, * * * in outlawing the ‘ silver platter ’ doctrine stated —
“‘Then came Wolf v. [People of State of] Colorado, 338 U. S. 25, 69 S. Ct. 1359, 93 L. Ed. 1782. With the ultimate determination in Wolf — that the Due Process Clause of the Fourteenth Amendment does not itself require state courts to adopt the exclusionary rule * * * — we are not here directly concerned. ’
“ Mapp itself removes the last vestige of doubt as to the intent of the Supreme Court to impose the rule prospectively and not retroactively —
“ ‘ Today we once again examine Wolf’s constitutional documentation # * and, after its dozen years on our hooks, are led by it to close the only courtroom door remaining open to evidence secured by official lawlessness in flagrant abuse of that basic right * * *. We hold that all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court.’
“ [1] I conclude from the foregoing that until Mapp (June 19, 1961) evidence obtained as a result of an unreasonable search *586 and seizure was admissible in the courts of this State to convict. Therefore coram nobis does not lie to vacate a conviction obtained by what was at the time of trial constitutional evidence. ’ ’
A further word may be said concerning the court’s intention that the exclusionary rule be prospective only in operation.
In Weeks v. United States (232 U. S. 383, 398) decided half a century ago, we may note that some of the articles used as evidence against Weeks had been unlawfully seized by State Police acting on their own account. The court held that the admission of this evidence was not error for the reason that the “ Fourth Amendment ” is not directed to individual misconduct of such officials. Its limitations reach the Federal Government and its agencies.
Then came Byars v. United States (273 U. S. 28, 33) where the court held that if the search “ in substance and effect was a joint operation of the local and federal officers ” the evidence must be excluded. This ruling, on the theory, that Federal officers may not evade the consequences of the exclusionary rule by enlisting State Police to secure the evidence. (See, also, Gambino v. United States, 275 U. S. 310.) But, nevertheless the rule was reiterated that evidence which had been seized by Federal officers in violation of the Fourth Amendment could not be used in a Federal criminal prosecution and that evidence unlawfully obtained by State officers was admissible since the exclusionary rule was directed solely to the misconduct of Federal officers. Thus, up to 1949 and Wolf, there was no suggestion that either the Fourth Amendment or the exclusionary rule was applicable to the States.
Wolf (338 U. S. 25, supra) went halfway. There the court held unanimously that the Federal Constitution by virtue of the Fourteenth Amendment prohibits unreasonable searches and seizures by State officers. But the court also held that the due process clause of the Fourteenth Amendment does not itself require State courts to adopt the exclusionary rule. Many States did so. (See 364 U. S. 224, Appendix.) Hew York refused on several occasions to adopt the rule (People v. Variano, 5 N Y 2d 391 [citing People v. Before, 242 N. Y. 13, cert, denied 270 U. S. 657]).
In Elkins v. United States (364 U. S. 206) decided one year before Mapp, the court outlawed altogether the silver platter doctrine. Ho unreasonably seized evidence by State officers could be admitted in a Federal prosecution. But in Elkins, the court again reiterated that the exclusionary rule was not commanded upon the States. “In States which have not adopted the exclusionary rule, on the other hand, it would work no *587 conflict with local policy for a federal court to decline to receive evidence unlawfully seized by state officers. The question with which we deal today affects not at all the freedom of the states to develop and apply their own sanctions in their own way ” (p. 221).
In his dissent (pp. 240-242) Mr. Justice Frankfurter states :
“ In the second place, in light of the holding of Wolf that state courts may admit evidence like that involved in these cases, it cannot be said that there is any sufficient justification based upon controlling the conduct of state officers for excluding such evidence from federal courts, as the Court would do, when gathered by state officials whose States would admit it. * * * Indeed this impressive insistence of States not to follow the Weeks exclusionary rule was the controlling consideration of the decision in Wolf not to read it into this requirement of 1 due process ’ under the Fourteenth Amendment ”.
Thus, as late as 1960, long after this petitioner’s conviction we find conclusive proof that there was no intention to impose the exclusionary rule upon the States. What is evident is that the court moved in that direction, but consideratively and deliberatively refrained from so doing until Mapp. This sequence of decisions does not of course establish that it was the intention of the court not to make Mapp retroactive. But as noted in People v. Figueroa (220 N. Y. S. 2d 131, supra) the literal import of the language used seems to express such an intention.
However one high court, the Supreme Court of Massachusetts has, at least in dicta, found no such intention. In Commonwealth v. Spofford (180 N. E. 2d 673, 675 [Mass.]), the court added to its pertinent decision, infra, the dicta not necessary to its holding: “ This complete reversal of so recent a ruling necessarily affecting many State court convictions has led to some discussion whether the Mapp ruling should be given only prospective operation. Indeed, at least one court has so held [citing my decision in Figueroa]. But the Supreme Court of the United States did not limit Griffin v. Illinois, 351 U. S. 12 * * * to prospective operation, as has been suggested in the concurring opinion of Frankfurter, J. (pp. 25-26). See Eskridge v. Washington Prison Board, 357 U. S. 214, * * * which in 1958 applied the Griffin rule to a conviction occurring in 1935. * * * We observe nothing in the Mapp majority opinion which indicates an intent that it be confined to prospective operation, assuming such a position could be soundly taken.”
Although dicta, this opinion of the Massachusetts Supreme Court is entitled to great respect.
*588 In this same regard, it is fair to observe that Mr. Justice Hablan in his Mapp v. Ohio (367 U. S. 643, 676) dissent observed:
“ This would indicate * * * that the issue which is now being decided may well have untoward practical ramifications respecting state cases long since disposed of in reliance on Wolf ”.
If there is indeed no factual justification for the finding from Mapp of an intention that the exclusionary rule be prospective only in its operation then the issue must be considered from a different perspective. (See discussion in III, infra.)
I find here however as I found in People v. Figueroa (220 N. Y. S. 2d 131, supra) that such intention is evidenced in the opinion. I reason that Mapp was designed to control State police conduct. The sanctions mentioned by the Wolf court — civil suits, criminal or administrative proceedings against the police officer, Federal civil rights proceedings — had proved ineffective. Mapp imposed the only sanction theretofore proved effective, the exclusionary rule. Surely making such a sanction retroactive could have no possible effect on future police conduct.
II.
There have been some notable decisions in the State courts since Mapp.
Our Court of Appeals has held that the exclusionary rule would be applied retroactively to pending appeals from preMapp judgments of conviction. (People v. Loria, 10 N Y 2d 368.) The Supreme Courts of New Jersey and Massachusetts reached the same conclusion. (State of New Jersey v. Valentin 36 N. J. 41; Commonwealth v. Spofford, 180 N. E. 2d 673 [Mass.].)
The foregoing recent decisions concerned direct appeals from convictions. A post-conviction proceeding, habeas corpus to review a Maryland murder conviction, was recently before the U. S. District Court of Maryland (Hall v. Warden, Maryland Penitentiary, 201 F .Supp. 639, 643) wherein Chief Judge Thomsen said:
“ But it has not yet been held in any case cited or found that all persons convicted in state courts during the period between Wolf v. Colorado and Mapp v. Ohio are entitled to a new trial or release if any. evidence, obtained as the result of an unreasonable search and seizure was admitted at their trial, even though the judgment of conviction may have become final long before Mapp was decided and whether or not the point was raised at the trial.
*589 “ In view of the frequent use in Mr. Justice Clark’s opinion of such words as ‘ then ’, ‘ today and ‘ no longer ’, and the reasons given for the Supreme Court’s previous refusal to impose the Weeks exclusionary rule on the states, such an extreme construction appears unwarranted. I conclude that Mapp v. Ohio was not intended to require that a new trial or release must be granted to a person convicted in a state court because evidence obtained as the result of an unlawful search was admitted in evidence at the trial, where the point was not raised at the trial and the judgment had become final before the decision of the Supreme Court in the Mapp ease. ’ ’
This finding is directly contra to the finding of the Massachusetts Supreme Court in Commonwealth v. Spofford (supra).
III.
Assuming arguendo that there was no intent, express or implied, to make the ruling in Mapp prospective only in operation, the issue of law remains whether a post-conviction remedy is available to State prisoners in the State courts via coram nobis or to State prisoners in the Federal courts via habeas corpus to review State detention “ in violation of the Constitution # * * of the United States.” (U. S. Code, tit. 28, § 2241, subd. [c], par. [3].)
We are not here concerned with the defendant’s rights on appeal. (People v. Loria, 10 N Y 2d 368; People v. Friola, 11 N Y 2d 157; People v. Coffey, 11 N Y 2d 142; People v. Kitchens, 46 Cal. 2d 260; People v. Farrara, 46 Cal. 2d 265; Shorey v. State, 227 Md. 385.)
We are concerned primarily with the post-conviction remedy of coram nobis. And, we are also concerned with the post-conviction remedy of habeas corpus by State prisoners to the Federal courts to test State detention. For, if the latter remedy is available our State courts should under such circumstances grant the same relief by coram nobis. For State courts, equally with Federal courts, have obligation to guard, enforce and protect every right granted or secured by the Federal Constitution. (Irvin v. Dowd, 359 U. S. 394; State of New Jersey v. Rosania, 33 N. J. 267; Reitz, Federal Habeas Corpus; Post-Conviction Bemedy for State Prisoners, 108 U. of Pa. L. Rev. 461 [I960].)
It is unnecessary to discuss at length the generalities of the scope of coram nobis. It has been expressed in many ways by our courts. (People v. Sadness, 300 N. Y. 69, 73, 74; People v. Silverman, 3 N Y 2d 200, 202, 203.) What emerges is that *590 cor am nobis is basically a “remedy against injustice”. (People v. Sullivan, 3N Y2d 196, 200.)
The question is whether these post-conviction remedies are available to correct all injustice or only such injustice where no other remedy (e.g., appeal) was available to the defendant.
Its origin was as a procedural remedy when no other remedy was available. Thus if the injustice is caused by errors of fact or law which appear on the face of the record and which could have been raised on appeal, coram nobis is not available. (People v. Sullivan, 3 N Y 2d 196; People v. Hamm, 9 N Y 2d 5; People v. Sadness, 300 N. Y. 69; People v. Martindale, 14 A D 2d 931; People v. Balsamo, 11 A D 2d 1040.)
On the other hand errors of law or fact not appearing on the face of the record may generally be availed of by coram nobis. Thé theory, at least, is that with respect to matters dehors the record, appeal would be futile. (People v. Picciotti, 4 N Y 2d 340; People v. Farina, 2 N Y 2d 454; People v. Mangi, 10 N Y 2d 86; People v. Wright, 12 A D 2d 466; People v. Ciavarelli, 11 A D 2d 642; Machibroda v. United States, 368 U. S. 487.) This is especially true in the plea cases.
But what of violations of constitutional rights? Are such violations always subject to collateral attack by the post-conviction remedy of coram nobis whether off or on the record or whether the constitutional issue could have been raised on appeal?
For example, in the “no counsel” area, our State courts give little attention to whether or not the issue appeared on the face of the record so that it could be determined on an appeal. (People v. Silverman, 3 N Y 2d 200; People v. Koch, 299 N. Y. 378; People v. McGuinness, 9 N Y 2d 690; People v. Brantle, 13 A D 2d 839; People v. Hill, 9 A D 2d 451, affd. 8 N Y 2d 935.) The Federal cases from Powell v. Alabama (287 U. S. 45) to McNeal v. Culver (365 U. S. 109) emphasize the importance of that fundamental right. But perhaps because the 11 no counsel ” cases are mostly in the plea rather than trial area and because lack of counsel, insufficiency of time to prepare for trial, or inadequacy of counsel directly affect the right to appeal or the raising of legal or constitutional issues at the trial, the 1 ‘ no counsel ” area cases are an exception to the general need that coram nobis is not a substitute for appeal.
In contrast to the “ no counsel ” area, the Court of Appeals has held that the constitutional right to confrontation of witnesses (see People v. Kendricks, 300 N. Y. 544) may be waived if not raised on appeal. Coram nobis was held not available.
*591 Turning to the “ involuntary confession ” area, in People v. Noia (3 N Y 2d 596, 601) the court stated: “ His failure to pursue the usual and accepted Appellate procedure to gain a review of the conviction does not entitle him to utilize the * * * extraordinary remedy of cor am nobis * * *. And this is so even though the asserted error or irregularity relates to a violation of a constitutional right.” (Italics mine.) Noia’s accomplices who had appealed and gained their freedom (see People v. Caminito, 3 N Y 2d 596) had established that the confessions were, in fact and law, involuntary. It is interesting to note that following the decision of the Court of Appeals, Noia sought his freedom via habeas corpus to the Federal courts on the ground that he was being detained in violation of the Federal Constitution. On February 7, 1962, the Second Circuit (United States ex rel. Noia v. Fay, 300 F. 2d 345) granted the writ. This fact alone is not at all significant. The Federal courts may under section 2241 of title 28 of the United States Code grant the writ even after an appeal to a State’s highest court has decided the issue adversely to the petitioner. (Reck v. Pate, 367 U. S. .433; Rogers v. Richmond, 365 U. S. 534; Spano v. New York, 360 U. S. 315; Malinski v. New York, 324 U. S. 401.) What is significant is that the Second Circuit held (300 F. 2d 345, 362) that (1) the prisoner’s failure to exhaust State remedies, and (2) the adequate State grounds (failure to appeal) are overcome by the “ exceptional circumstances ” of the case. The court found that “ The right of the defendant to be tried without the introduction into evidence of a confession wrung from him against his will is a constitutional right of the greatest magnitude. ’ ’ The court concluded therefore ‘ ‘ that the state procedural ground, that of a simple failure to appeal, reasonable enough to prevent federal judicial intervention in most cases, is in this particular case unreasonable and inadequate.” But the facts in Noia were exceptional. For only a few months previously, the same court found no ‘ ‘ vital flaw ’ ’ (Brown v. Allen, 344 U. S. 443, 506) in our State courts fact-finding process on the issue of coercion (People v. Kulikauskas, 273 App. Div. 978) and denied habeas corpus.
Returning to the availability of coram nobis in the confession area in our State courts, we find some disparity in decision among our own Departments. Following the decisions of Spano v. New York (360 U. S. 315), People v. Waterman (9 N Y 2d 561), and People v. Di Biasi (7 N Y 2d 544) that a confession obtained after indictment in the absence of counsel, is involuntary, many State prisoners sought release via coram nobis on the ground that they were convicted by the use of such uncon *592 stitutional confessions similarly obtained. The Second Department (People v. Woodbury, 13 A D 2d 522; People v. Morrison, 14 A D 2d 887) held coram nobis not available since the error of law could have been reviewed on appeal. (Note however, that appeal would have been futile on the then existing law.) The Fourth Department (People v. Howard, 15 A D 2d 863; People v. Stevenson, 13 A D 2d 717) ordered hearings. (See United States v. Murphy, 295 F. 2d 385.) This is in effect a finding that the “ change of law ” mandated by Spano, Di Biasi and Waterman (supra), was to be given retroactive application with respect to prisoners convicted by such involuntary confessions. And this despite the fact that they did or could have raised the issue on appeal. This is in effect a finding of ‘ ‘ exceptional circumstance ”. (What the Court of Appeals eventually does with respect to these confession cases may be determinative of the search and seizure issue under Mapp.)
Some questions arise.
Is the issue of conviction by unconstitutional evidence resulting from an unreasonable search of the same constitutional magnitude as a conviction via an involuntary confession? Is it a violation of so fundamental a right as to constitute injustice? See review of confession cases in the U. S. Supreme Court as discussed in Culombe v. Connecticut (367 U. S. 568). We may note in this connection that neither right has much to do with guilt or innocence. A confession may be involuntary even though truthful. (Rogers v. Richmond, 365 U. S. 534.) Similarly unconstitutionally seized evidence must be suppressed even when it clearly establishes guilt.
We may begin by observing that the exclusionary rule has been a command of the Federal Constitution for many years. Yet the Federal courts have never made available the Federal equivalent of State coram nobis (U. S. Code, tit. 28, § 2255). In a series of cases Federal prisoners have been denied post-conviction relief on the ground that the issue of unreasonable search and seizure was or could have been raised on the Federal trial or in the Federal appellate courts. (Gaitan v. United States, 295 F. 2d 277; United States v. Jenkins, 281 F. 2d 193; Way v. United States, 276 F. 2d 912; United States v. Scales, 249 F. 2d 368; Barber v. United States, 197 F. 2d 815 and cases cited in footnote.) These holdings reflect the attitude of the Federal courts Avith respect to oilier constitutional rights including confession issues. (See Lampe v. United States, 288 F. 2d 881.) And surely our State courts would not noAv grant coram nobis relief to prisoners convicted in our State courts post-Af ctpp where the issue was raised and determined on the trial and/or *593 appeal. In fact even in those States which had adopted the exclusionary rule pre-Mapp, coram nobis or its equivalent was denied under such circumstances. (Banks v. Warden of Maryland Penitentiary, 151 A. 2d 897 [Md.]; People v. Cole, 312 P. 2d 701 [Cal.].)
We may note in this connection a reference in the majority opinion of Mapp v. Ohio (367 U. S. 634, 659, n. 9): “ 9. As is always the case, however, state procedural requirements governing assertion and pursuance of direct and collateral constitutional challenges to criminal prosecutions must be respected.” This would mean that a determination of or failure to raise in our trial and/or appellate courts an issue of search and seizure, should preclude a State prisoner’s collateral remedies of coram nobis to the State courts and habeas corpus to the Federal courts. But as noted heretofore (United States ex rel. Noia v. Fay, 300 F. 2d 345, Second Circuit, Feb. 7, 1962) habeas corpus was granted under ‘ ‘ exceptional circumstances ” to a State prisoner who failed to appeal a confession issue.
And it has been noted (supra) that at least one State prisoner has sought relief in habeas corpus (U. S. Code, tit. 28, § 2241, subd. [c], par. [3]) in a Federal court (Hall v. Warden of Maryland Penitentiary, 201 F. Supp. 639, supra). That court held that Mapp was probably prospective in application only and denied relief.
Thus it is clear that failure to raise an issue of unreasonable search and seizure (or other issue of constitutional dimension) by electing to plead to the crime or by failing to appeal an adverse ruling by the trial court, forecloses resort to collateral attack upon the judgment of conviction. This is the rule in our State courts in coram nobis. It is the rule in the Federal courts with respect to the equivalent remedy (U. S. Code, tit. 28, § 2555) motion to vacate the conviction. And at least one lower Federal court has refused to grant a State prisoner habeas corpus (U. S. Code, tit. 28, § 2241, subd. [c], par. [3]) relief on the ground that his Federal Constitutional rights have been violated.
Of course on an issue of search and seizure, an appeal would have been futile. And if taken, the pre-Mapp conviction would be affirmed even if the issue were raised on the trial and appeal. And, if we make post-conviction remedy available for defendants who tried the issue and perhaps even made formal objection to the admission of the evidence, what disposition should we make of defendants who pleaded guilty in reliance on prc-Mapp decisions'?
The issue is simply whether a change in the law in this particular area constitutes such an “ exceptional circumstance” *594 as to permit collateral attack on the judgment of conviction after such change in the law.
A similar situation was before the United States Supreme Court in Sunal v. Large (332 U. S. 174, 177-178). A change of an evidentiary rule enunciated by that court after Sunal’s conviction would have resulted in Sunal’s acquittal on his trial. He brought a post-conviction proceeding, habeas corpus, contending that he was unlawfully and unconstitutionally imprisoned. The court denied relief. The pertinent quote reads: “ The normal and customary method of correcting errors of the trial is by appeal. Appeals could have been taken in these cases, but they were not. * * # Moreover, this is not a situation where the facts relied upon were dehors the record and therefore not open to consideration and review on appeal, [citing cases] * * * The argument is that since the state of the law made the appeals seem futile, it would be unfair to these registrants to conclude them by their failure to appeal. *" * * So far as convictions obtained in the federal courts are concerned, the general rule is that the writ of habeas corpus will not be allowed to do service for an appeal, [citing cases] * * * There have been, hoioever, some exceptions. That is to say, the writ has at times been entertained either without consideration of the adequacy of relief by the appellate route or where an appeal would have afforded an adequate remedy.” (Italics added.)
Both the majority and dissenting opinions (Frankfuetee, J.) discuss at length the exceptions. One of the exceptions noted in both opinions is “ where the trial * * * by a federal Court violated specific constitutional guarantees ” (pp. 177-178). Most of the constitutional issues cited as exceptions are in the i ‘ no counsel ’ ’ area. Indeed these are exceptions in our State post-conviction procedures.
Another interesting case is Jordan v. United States (352 U. S. 904). The Supreme Court' seems to have decided in a Per Curiam opinion that delay in bringing a defendant to trial may be made the subject of collateral attack even though not raised before or during trial. (See Jordan v. United States, 233 F. 2d 362, 368-369, the opinion below; see, also, Lampe v. United States, 288 F. 2d 881, supra, in which the court explains the Jordan decision as involving “ exceptional circumstances ” and not the general rule.)
In Hodges v. United States (282 F. 2d 858, cert, granted 365 U. S. 810) the defendant failed to appeal. He contended that such failure was due to absence of representation by counsel after sentence. The court denied a hearing, but added (p. 865):
*595 “ It would seem clear that a failure to appeal from a conviction does not always save it from collateral attack on a constitutional ground, or indeed on other ground where the court is convinced justice requires a remedy, though sought collaterally. In other words the Great Writ, and section 2255, are not to be imprisoned within an ironclad rule stated in terms of collateral relief not being a substitute for an appeal.” (See, also, Askins v. United States, 251 F. 2d 909.)
The Federal decisions in the coram nobis (U. S. Code, tit. 28, § 2255) area would indicate that only exceptional circumstances would justify resort to a collateral remedy when the issue could have been raised on appeal. Sunal v. Large (332 U. S. 174, supra) holds that “ change of law”, at least one not of constitutional dimension, does not constitute per se such exceptional circumstances. (See, also, Warring v. Colpoys, 122 F. 2d 642; Meyers v. Welch, 179 F. 2d 707.)
In Gaitan v. United States (295 F. 2d 277, supra) the search had been made by State officers. The search was held reasonable both on pretrial motion to suppress and at the trial. Judgment was affirmed and certiorari denied. After Elkins v. United States (364 U. S. 206) which changed the law with respect to searches by State officers, the defendant sought collateral relief under section 2255 of title 28 of the United States Code. The court said: “ The question whether the marihuana was admissible in evidence or should be excluded therefrom was put squarely in issue in the criminal case. The question was determined with pinpointed precision. The evidence was admitted and the judgments and sentences became final. Upon becoming final, they fell within the range of the doctrine of res judicata as between the petitioners and the United States in respect to the evidence being admissible or inadmissible, depending upon the circumstances under which it was obtained. And a change thereafter in the rule relating to the admissibility of evidence obtained in that manner did not arrest or suspend application of the principle of res judicata to such judgments and sentences.” (Gaitan v. United States, 295 F. 2d 277, 280, supra.) Thus one Federal court does not consider a change of law in a constitutional area such as search and seizure as justifying resort to collateral remedies.
Already noted however is the fact that our Second and Fourth Departments differ with respect to the availability of coram nobis in the confession area, an area also of constitutional dimension. When a change in the law (Spano v. New York, 360 U. S. 315, supra; People v. Di Biasi, 7 N Y 2d 544, supra) was brought about by later court decision, the Second Department held coram *596 nobis was not available (People v. Woodbury, 13 A D 2d 522; People v. Morrison, 14 A D 2d 887) and the Fourth Department held that coram nobis was available (People v. Howard, 15 A D 2d 863; People v. Stevenson, 13 A D 2d 717). The latter holding indicates that the issue is of constitutional dimension and that the change in law presents ‘£ exceptional circumstances ’ ’.
It may be noted however that our courts have never opened up to indigent prisoners ‘ ‘ within the area of constitutional discretion ” (Griffin v. Illinois, 351 U. S. 12, 24) attack via coram nobis solely on the ground that indigency prevented an appeal. Also, when People v. Rosario (9 N Y 2d 286) changed an evidentiary rule not of constitutional dimension, collateral attack was not made available to prisoners convicted prior thereto.
A distillation of all the decisions on the subject of collateral attack via coram nobis must lead to the conclusion (1) that on issues of law and fact, the court is bound by what has been decided or could have been decided in the trial and appeal; (2) that on issues of constitutional dimension, the court is always bound by what has been decided and generally on what could have been decided except when ££ exceptional circumstances ” require the court to consider a constitutional issue not theretofore fully and adequately considered. A change of law, even on an issue of constitutional dimension, does not ipso facto constitute £ ‘ exceptional circumstances ’ ’.
Surely when a constitutional issue involves actual guilt or innocence our courts will permit collateral attack to prevent injustice. (See Ex parte Siebold, 100 U. S. 371; Leak v. Meyers, Pa. Ct. of C. P., 1958.) But as noted heretofore search and seizure issues are rarely concerned with the guilt or innocence of the accused. On the other hand an involuntary confession may be and often is the sole evidence establishing guilt.
A final determination of the issue discussed in Point III rests in the discretion of the Court of Appeals. That court may determine the issue on a case-by-case basis as £ £ exceptional circumstances ” may be disclosed in particular cases. There is no constitutional bar to prevent the court from affording coram nobis relief to prisoners heretofore convicted in pre-Mapp cases. (See Stimson, Retroactive Application of Law — A Problem in Constitutional Law, 38 Mich. L. Rev. 30 [1939].)
This petition is denied without hearing, since only an issue of law is involved, on the ground that Mapp is prospective only in operation. I add that my reading of the trial minutes discloses no ££ exceptional circumstances ” which would constitute injustice.