UNITED STATES of America ex rel. Edward J. MANCINI a/k/a Edmund Mancini

v.

Alfred T. RUNDLE, Superintendent State Correctional Institution at Philadelphia.

Misc. No. 2516.

United States District Court E. D. Pennsylvania.

July 11, 1963.

Donald J. Goldberg, Garfield W. Levy, Philadelphia, Pa., for petitioner.

1. 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949).

Burton Satzberg, Asst. Dist. Atty., James C. Crumlish, Jr., Dist. Atty., for respondent.

FREEDMAN, District Judge.

The petition for habeas corpus in this case presents the question whether Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L. Ed.2d 1081 (1961), which overruled Wolf v. Colorado [1] and held that evidence obtained by a search and seizure in violation of the Federal Constitution is inadmissible in a State criminal trial, applies to a State prisoner whose trial was held before the decision was announced.

Before I reach this important question of law a question of fact must first be determined—whether the search and seizure here made was illegal.

## I.

The magistrate issued a search warrant on a written complaint and affidavit. The Commonwealth argues that a presumption of regularity attaches to the issuance of the warrant (citing Castle v. United States, 287 F.2d 657 (5th Cir. 1961))* and that there is nothing on the record to suggest that the evidence was unlawfully obtained.

At the hearing before me, however, the complaint and affidavit as well as the search warrant were offered in evidence and the officer who made the complaint was produced as a witness. His testimony is clear and emphatic that he filled in a printed form of complaint and affidavit which contained no facts from which a determination of probable cause could possibly be made. Indeed, the officer left blank the space in the printed form which contains the marginal instruction: "Be sure that this space is filled in with facts establishing probable cause." His testimony was explicit that he gave no information to the magistrate beyond what appears in the printed form of complaint and affidavit as he had filled it out. Moreover, although the document itself contains the magistrate's signature to a jurat indicating that the complaint

* See footnote 7, infra.

and affidavit had been sworn to by the officer before the magistrate, the officer's testimony is flatly to the contrary. He was not sworn by the magistrate. It is therefore clear, and I so find, that the magistrate issued a search warrant on April 26, 1960, on an unsworn complaint and affidavit which recited no facts from which he could have made a determination whether probable cause existed.[2]

Whatever presumption there may be as to the regularity and validity of a search warrant [3] it has been undermined by the testimony of the officer which shows that the warrant was issued in violation of requirements of the Federal and State Constitutions. Both Constitutions require that the showing of probable cause be "supported by oath or affirmation".; and the Pennsylvania Constitution adds that the oath or affirmation be "subscribed to by the affiant".[4] The search warrant therefore was invalid because it was issued in violation of the Federal and State constitutional requirement that the application be supported by oath.[5] More fundamentally significant is the proof that the magistrate, who must make his independent judgment whether probable cause exists from the sworn facts presented to him,[6] did not secure any facts upon which a judgment could be formed. In the Castle case [7] relied on by the Commonwealth for the presumption of regularity, the court said: "In issuing a search warrant the Commissioner must exercise his own judgment as to whether the facts in the affidavit constitute probable cause for the search warrant * * *." There can be no judgment based upon facts that are not presented. Any other view would make the interested police officers rather than an objective judicial officer the protective screen for the determination of the existence of probable cause.[8]

■ I hold, therefore, that the warrant was invalid and the search and seizure made pursuant to it was illegal.

## II.

I come then to the basic question presented by the petition.

Petitioner was tried in May 1961 before a judge without a jury in the Court of Quarter Sessions of Philadelphia County on seven bills of indictment charging burglary, larceny and receiving stolen goods. At the trial no specific objection was made to the validity of the search and seizure, nor was any attempt made to inquire into the circumstances sur-

2. The opinions of the trial judge and the Superior Court refer to search warrants, but the one here referred to appears to be the only one under which evidence was secured.

3. See Levin v. Blair, 17 F.2d 151 (E.D. Pa.1927), Dickinson, J.

4. The Fourth Amendment of the Federal Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, *supported by Oath or affirmation*, and particularly describing the place to be searched, and the persons or things to be seized."
The Pennsylvania Constitution, Article I, § 8, P.S., provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, *supported by oath or affirmation subscribed to by the affiant.*"

5. See Commonwealth v. Simmons, 26 Pa. Dist. & Co.R.2d 120 (Q.S.Phila.1961).

6. McDonald v. United States, 335 U.S. 451, 455–456, 69 S.Ct. 191, 93 L.Ed. 153 (1948); Trupiano v. United States, 334 U.S. 699, 705, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948); Johnson v. United States, 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L. Ed. 436 (1948); United States v. Lefkowitz, 285 U.S. 452, 464, 52 S.Ct. 420, 76 L.Ed. 877 (1932); Castle v. United States, 287 F.2d 657, 661 (5th Cir. 1961), cert. granted and remanded for resentence on other grounds, 368 U.S. 13, 82 S.Ct. 123, 7 L.Ed.2d 75.

7. Castle v. United States, 287 F.2d 657, 661 (5th Cir. 1961), cert. granted and remanded for resentence on other grounds, 368 U.S. 13, 82 S.Ct. 123, 7 L.Ed.2d 75.

8. See Commonwealth v. Simmons, 26 Pa. Dist. & Co.R.2d 120 (Q.S.Phila.1961).

rounding the issuance of the search warrant. When the questioned evidence was offered at the trial, however, the trial judge inquired of counsel for the petitioner whether he had any objection, and counsel then replied that he objected to its admission. Decision was deferred to June 19, 1961. The trial judge could not have known that this was a date that would have historic significance in the law of search and seizure. On that date the decision in Mapp v. Ohio was handed down by the Supreme Court of the United States. On the same day the trial judge found petitioner guilty on all the charges and deferred sentence pending motions for new trial and in arrest of judgment, which were filed on June 21, 1961.[9] Later, on October 13, 1961, a petition was filed with the trial judge to quash the search warrant, and to suppress the evidence seized thereunder, specifically relying on the Mapp case. The trial judge granted a rule on the Commonwealth to show cause why the prayer of the petition should not be granted. The Commonwealth filed no answer and after argument the court on December 26, 1961, dismissed the petition and discharged the rule to show cause. On January 11, 1962, the motions for new trial and in arrest of judgment were also denied. On the same date petitioner was sentenced to imprisonment for a term of not less than three years nor more than fifteen years on one bill of indictment and sentence on all other convictions was suspended.

Petitioner appealed from the burglary conviction[10] to the Superior Court of Pennsylvania. On September 13, 1962, the Superior Court in Commonwealth v. Mancini, 198 Pa.Super. 642, 184 A.2d 279, affirmed the judgment of sentence. It held that since the trial record showed no invalidity in the search and seizure the question was not timely raised and

the Mapp case did not apply. The Court said: "To sustain appellant's contention would require the courts of this Commonwealth to re-examine prior convictions on the mere belated allegation that the conviction involved evidence obtained as the result of an unreasonable search and seizure. * * *

"Furthermore, the rule of law announced in Mapp v. Ohio * * * can be interpreted as generally prospective in its application, and it would be unjustifiable retrospective lawmaking to convict the trial court of error in relying on the authority of decisions of the Supreme Court of the United States in force at the time of trial. * * * Under the facts and circumstances of the Mapp decision, the sudden change of the law by the Supreme Court of the United States as to the exclusionary rule is a disturbing exercise of judicial power and should not have retroactive application with respect to criminal proceedings in this Commonwealth; the obvious objective of the decision would not be enhanced by such application." (198 Pa.Super. p. 646, 184 A. 2d p. 281).

Petitioner's application to the Supreme Court of Pennsylvania for an allocatur was denied on September 28, 1962[11]; and his application for certiorari was denied by the Supreme Court of the United States on February 18, 1963.[12] Thereupon petitioner surrendered to the Pennsylvania prison authorities and filed the present petition. I ordered his release on the entry of bail in the sum of $10,000 pending hearing and final disposition of his petition. (See Johnston v. Marsh, 227 F.2d 528, 56 A.L.R.2d 661 (3d Cir. 1955)).

A threshold question arises whether in these circumstances petitioner has exhausted his State remedies within the meaning of 28 U.S.C.A. § 2254. It is conceded that he has made no application

---

9. Among the reasons assigned in the motion for new trial was the claim that it was error to admit into evidence various items which were seized pursuant to the search warrant here under attack.

10. Bill No. 317, Dec.Sessions 1960.

11. Commonwealth v. Mancini, Allocatur Docket No. 4, No. 126. See 198 Pa.Super. xxix.

12. Mancini v. Pennsylvania, 372 U.S. 911, 83 S.Ct. 725, 9 L.Ed.2d 720 (1963).

for a writ of habeas corpus in the State courts. There can be no doubt, however, of the view of the Pennsylvania courts on the question before me. It was expressed by the Superior Court in the petitioner's direct appeal from the judgment of conviction in this case (Commonwealth v. Mancini, supra) and in Commonwealth v. Campbell, 196 Pa.Super. 380, 175 A.2d 324 (1961), cert. den. 371 U.S. 901, 83 S.Ct. 203, 9 L.Ed.2d 164 (1962), rehearing den. 371 U.S. 959, 83 S.Ct. 498, 9 L. Ed.2d 507 (1963) and Commonwealth v. Clark, 198 Pa.Super. 64, 181 A.2d 859 (1962), in all of which the Supreme Court of Pennsylvania refused allocaturs.[13] In these cases the applicability of Mapp v. Ohio was urged on direct appeal from the judgment of conviction. They were not cases of collateral attack by habeas corpus long after the judgment of conviction had ultimately been affirmed. Very recently the Pennsylvania view was restated on a petition for habeas corpus. In Commonwealth ex rel. Stoner v. Myers,[14] Mapp was urged upon the court in a case where a defendant prior to Mapp had objected to the admission of evidence obtained in a search, but no post-trial motions were filed and no appeal was taken from the judgment of conviction. The Superior Court affirmed the lower court's refusal of relief. The court reiterated the view expressed in the prior cases, including the Mancini case, that the trial courts of Pennsylvania will not be reversed on appeal for having relied on Wolf v. Colorado before it was overthrown by the Mapp case. The Superior Court said: "We have indicated that the decision in Mapp v. Ohio should be interpreted as generally prospective in its application, since it would be unjustifiable retrospective lawmaking to convict the trial court of error in relying on the authority of decisions of the Supreme Court of the United States in force at the time of the trial. * * * Whatever rule may evolve from the decisions as to the application of Mapp v. Ohio to pending appeals, it is the *considered opinion* of the judges of this Court that convictions which have been unappealed and have become final should not ordinarily be subject to collateral attack by habeas corpus on the ground that evidence alleged to have been illegally received was used at the trial. Any complaints by relator in regard to arrest and search were matters for defense, reviewable for possible error on appeal and not by habeas corpus. * * * *" (199 Pa.Super. p. 346, 185 A.2d p. 808. Italics added).

There can be no doubt from this review of the Pennsylvania decisions that the appellate courts of Pennsylvania will not reverse a trial court for having relied on Wolf v. Colorado and will refuse relief if the question is raised either directly by appeal from the judgment of conviction, as in the Mancini case, or collaterally by habeas corpus, as in Commonwealth ex rel. Stoner v. Myers. Very recently the Supreme Court of Pennsylvania has expressed a similar view in Commonwealth ex rel. Craig v. Banmiller, 410 Pa. 584, 587–588, 189 A.2d 875 (1963), which refused retrospective application to the principle of Gideon v. Wainwright [15] that an accused is entitled to the assistance of counsel in a State criminal prosecution.[16] The Commonwealth concedes that the pe-

13. Refusal of allocatur in Commonwealth v. Mancini is noted at 198 Pa.Super. xxix; in Commonwealth v. Campbell, at 196 Pa.Super. xxx; in Commonwealth v. Clark, at 198 Pa.Super. xxviii.

14. 199 Pa.Super. 341, 185 A.2d 806 (1962).

15. 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

16. Compare the 18 per curiam opinions of the Supreme Court of the United States, decided on April 22, 1963, 372 U.S. 766– 770, 773–780, 83 S.Ct. 1104–1107, three of which arose on collateral attack in the courts of Pennsylvania (Weigner v. Russell, 372 U.S. 767, 83 S.Ct. 1104, 10 L.Ed.2d 138 (1963); Garner v. Pennsylvania, 372 U.S. 768, 83 S.Ct. 1105, 10 L. Ed.2d 138 (1963); Vecchiolli v. Maroney, 372 U.S. 768, 83 S.Ct. 1105, 10 L.Ed.2d 138 (1963)), where State court judgments were vacated and the cases "remanded for further consideration in light of Gideon v. Wainwright, 372 U.S. 335, [83 S.Ct. 792, 9 L.Ed.2d 799.]"

titioner has exhausted his state remedies.[17]

■ Accordingly, although refinements might be made in seeking to distinguish the individual circumstances in the Pennsylvania cases, I hold that for all practical purposes the petitioner has exhausted his State remedies and that it would be useless to require that he raise collaterally in the State courts the same question which already has been raised and rejected in the direct proceeding there.[18]

I turn then to the substantive question. It is a difficult question, and as the Court of Appeals for the Fourth Circuit said in Hall v. Warden, Maryland Penitentiary,[19] "It is possible to present arguments either for or against the retrospective application of Mapp". Fundamental conceptions of jurisprudence and practical considerations of the widest scope are involved, and they have already occasioned scholarly discussion [20] and an accumulating number of conflicting decisions.[21] The practical consideration which probably will weigh heaviest until the question is set at rest by the Supreme Court is that a fully retrospective application of Mapp will flood the courts with habeas corpus petitions by prisoners long since convicted on evidence obtained by illegal search and seizure. Such full retrospective application of the newly an-

17. The Commonwealth's answer (¶ 8) to the petition for habeas corpus avers: "Although petitioner has failed to file a writ of habeas corpus in the State courts, it is admitted, as a practical matter, that there has been an exhaustion of remedies available to him in the courts of the Commonwealth of Pennsylvania."

18. See Fay v. Noia, 372 U.S. 391, 83 S. Ct. 822, 9 L.Ed.2d 837 (1963); Brown v. Allen, 344 U.S. 443, 447–450, 73 S. Ct. 397, 97 L.Ed. 469 (1953); Wade v. Mayo, 334 U.S. 672, 677–678, 68 S.Ct. 1270, 92 L.Ed. 1647 (1948); United States ex rel. Master v. Baldi, 198 F.2d 113, 116 (3d Cir. 1952).

19. 313 F.2d 483, 494 (4th Cir. 1963).

20. See Specter, Mapp v. Ohio: Pandora's Problems For the Prosecutor, 111 U.Pa. L.Rev. 4, 36 (1962); Bender, The Retroactive Effect of An Overruling Constitutional Decision: Mapp v. Ohio, 110 U. Pa.L.Rev. 650 (1962); Torcia & King, The Mirage of Retroactivity and Changing Constitutional Concepts, 66 Dick.L. Rev. 269 (1962); Traynor, Mapp v. Ohio At Large in the Fifty States, (1962) Duke L.J. 319, 338.

21. Mapp was applied retrospectively in Walker v. Peppersack, 316 F.2d 119 (4th Cir. 1963), following Hall v. Warden, 313 F.2d 483 (4th Cir. 1963).

Mapp was given retrospective application to pending appeals in State v. Smith, 37 N.J. 481, 181 A.2d 761 (1962); State v. Valentin, 36 N.J. 41, 174 A.2d 737 (1961); Commonwealth v. Spofford, 343 Mass. 703, 180 N.E.2d 673 (1962); People v. Loria, 10 N.Y.2d 368, 223 N.Y.S.2d 462, 179 N.E.2d 478 (Ct. of Appeals 1961).

Retrospective application was denied in Gaitan v. United States, 317 F.2d 494 (10th Cir. 1963); Spence v. Sacks, 173 Ohio St. 419, 183 N.E.2d 363 (1962); Petition of Dirring, 344 Mass. 522, 183 N.E. 2d 300 (1962); State v. Long, 71 N.J.Super. 583, 177 A.2d 609 (1962). Many New York cases are to the same effect—see People v. Muller, 11 N.Y.2d 154, 227 N.Y.S.2d 421, 182 N.E.2d 99 (Ct. of Appeals 1962), cert. den. 371 U.S. 850, 83 S.Ct. 89, 9 L.Ed.2d 86; People v. Hyde, 16 A.D.2d 942, 229 N.Y.S.2d 658 (1962); People v. Eastman, 33 Misc.2d 583, 228 N.Y.S.2d 156 (1962); People v. Angelet, Gen.Sess., 221 N.Y.S.2d 834 (1961), aff'd 18 A.D.2d 649, 235 N.Y.S.2d 828 (1962); People v. Figueroa, Co.Ct., 220 N.Y.S.2d 131 (1961); People v. Oree, Co.Ct., 220 N.Y.S.2d 121 (1961).

Retrospective application was denied to pending appeals in Commonwealth v. Mancini, 198 Pa.Super. 642, 184 A.2d 279 (1962) (the instant case; illegality of the evidence was not timely raised), cert. den. 372 U.S. 911, 83 S.Ct. 725, 9 L.Ed. 2d 720 (1963); Commonwealth v. Clark, 198 Pa.Super. 64, 181 A.2d 859 (1962) (objection made to illegally obtained evidence, but not pressed in the post-conviction motion); Commonwealth v. Campbell, 196 Pa.Super. 380, 175 A.2d 324 (1961), cert. den. 371 U.S. 901, 83 S.Ct. 203, 9 L.Ed.2d 164 (1962), rehearing den. 371 U.S. 959, 83 S.Ct. 498, 9 L.Ed.2d 507 (1963); People v. Friola, 11 N.Y.2d 157, 227 N.Y.S.2d 423, 182 A.2d 100 (Ct. of Appeals 1962) (illegality of the evidence was not timely raised); Shorey v. State, 227 Md. 385, 177 A.2d 245 (1962) (illegality of the evidence was not timely raised), cert. den. 371 U.S. 928, 83 S.Ct. 297, 9 L.Ed.2d 235.

nounced principle will undoubtedly result in the release of many such prisoners because of the unavailability of other evidence as a result of the long lapse of time. In Hall v. Warden, supra, the Court of Appeals for the Fourth Circuit considered and rejected the objection that many old convictions would be attacked, saying: "If such is the result of enlightened opinion, so be it. Such fears have not deterred the courts before." (313 F.2d p. 495).

The narrower question before me is not whether Mapp is to have the fullest retrospective operation, but rather whether it is to have any retrospective operation whatever. The facts in the present case bring it as close as a defendant can ever get to relying completely on the Mapp case in the pre-Mapp period. For since chronological chance brought the Mapp decision on the same day on which the conviction was entered here, Mapp was later raised in the trial court before the motions for new trial and in arrest of judgment were decided. The present case is narrower than People v. Loria,[22] where a defendant's conviction was affirmed by the Appellate Division of the New York Supreme Court on June 13, 1961, six days before the Mapp decision. The Court of Appeals of New York held that "the Mapp rule is to be applied in our review of pending appeals from pre-Mapp convictions", although it recognized that to do so "would likely result in the reversal of many convictions in pending cases, although the trials were free from error and conducted according to the law of this State and the interpretation of the Constitution by the Supreme Court of the United States as of the time of the trials". (10 N.Y.2d pp. 370, 371, 223 N.Y.S.2d p. 465, 179 N.E.2d p. 480). The court therefore reversed the judgment of conviction and ordered a new trial.

The State courts had full opportunity to award a new trial by applying Mapp to the present case then pending before them. The trial court was unable to do so because it was bound by appellate authority. The appellate courts refused to find error in a trial conducted according to the law as it existed at the time of trial.

What is before me, therefore, on habeas corpus, is a claim of an important constitutional right which was raised in the State courts as soon as it was recognized by the Supreme Court of the United States and this at a time when the case still was within the jurisdiction of the trial court on the motions for new trial and in arrest of judgment and in the petition to quash the search warrant and suppress the evidence seized thereunder. It was pressed in the trial court and on appeal. Having been rejected there in direct attack it is properly raised here on habeas corpus.

■ The accident of time made it possible for the petitioner to press his newly recognized constitutional rights at every level of the State court system. In these circumstances I hold that he stands within the protection of the Mapp case, however narrow its reach may ultimately be defined.

### ORDER

And now, July 11, 1963, the petition of Edward J. Mancini, also known as Edmund Mancini, for a writ of habeas corpus is granted. Issuance of the writ will be stayed for 60 days, within which time the Commonwealth of Pennsylvania may either seek review of this decision or determine to retry the petitioner; the present bail to continue pending any appeal that may be taken to the Court of Appeals for the Third Circuit.

22. 10 N.Y.2d 368, 223 N.Y.S.2d 462, 179 N.E.2d 478 (Ct. of Appeals 1961).