**UNITED STATES ex rel. Cuthbert EAST-MAN, Relator-Petitioner,**

**v.**

**Edward M. FAY, Warden of Green Haven Prison, Stormville, New York, Respondent.**

United States District Court
S. D. New York.

Dec. 5, 1963.

678

Cuthbert Eastman, pro se.

Louis J. Lefkowitz, Atty. Gen., of State of New York, for respondent, Barry J. Lipson, Brooklyn, N. Y., of counsel.

TYLER, District Judge.

On March 14, 1956, Cuthbert Eastman ("petitioner") was convicted in the County Court of Kings County of the felony of possession of narcotics with intent to sell. He is currently serving the 7½ to 15 years sentence imposed upon him. On July 23, 1963, he filed the present application for a writ of habeas corpus on the grounds that both his Fourth Amendment (unreasonable search and seizure) and Fifth Amendment (double jeopardy) rights had been violated. Since in my view the petitioner has exhausted his state remedies, I will consider the merits of both grounds of his application.

I

*Double Jeopardy*

Petitioner was brought to trial in June, 1955 upon an indictment charging a violation of the New York State law relative to the possession of narcotic drugs. During the course of the trial, the matter of the credibility of the testimony of one of the witnesses arose, as did the question of the sufficiency of the evidence upon which the indictment was based. A mistrial was declared upon motion of petitioner and his counsel.

Thereafter, on November 8, 1955, the trial court granted defendant's motion to dismiss the indictment, but with permission to the district attorney to submit the matter to another grand jury. Prior to such dismissal, a new indictment had been returned by the grand jury which, in substance, charged petitioner with the same offense as in the previous indictment. Petitioner was brought to trial on this new indictment and found guilty.

Petitioner has unsuccessfully raised the double jeopardy issue in prior applications for writs of habeas corpus in both the United States District Courts for the Southern and Northern Districts of New York.

Judge Murphy's unreported decision, (Eastman v. Fay, S.D.N.Y., decided September 18, 1961) considered the double jeopardy issue here raised by petitioner and determined that there was "no denial of any fundamental constitutional rights to petitioner in the procedure of which he complains, even if it was irregular under state law".

There is no reason to upset Judge Murphy's well-reasoned decision. It is clear that no double jeopardy is worked where a defendant is tried on a subsequent indictment afer having consented to a mistrial. Accordingly, petitioner's motion on this issue is denied.

II

*Illegal Search and Seizure*

Petitioner's second ground, however, requires further consideration. Upon examining the record, I find that it is necessary to decide two questions: first, does petitioner have "standing" to challenge the legality of the search and seizure and the use of its fruits at trial;[1] second, does the rule which determined that the fruits of an illegal search and seizure are inadmissible in a state court proceeding apply to a state prisoner who was arrested, tried and convicted before that rule was enunciated?[2] Before the disputed search and seizure can be properly discussed, the factual framework leading up to that event must be stated.

On or about February 25, 1956, at approximately 6:15 p. m., petitioner was approached in the hallway of a building by several men who ordered him to put up his hands and proceeded to search him. The men did not identify themselves, but petitioner assumed that they

1. The ultimate question here is whether the decision of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) applies to the instant set of facts.

2. Most courts have posed the question as follows: Is Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), retroactive? For reasons which will be elaborated upon elsewhere in this opinion, I do not consider this to be a question of retroactivity.

were police officers by their actions. Petitioner was asked where he was going, and informed the men that he was calling on a young lady who lived in the building. Upon being asked which was her apartment, petitioner pointed to her door, which had been left open because she was expecting petitioner, and through which at that moment she could be seen talking on the telephone. Petitioner was pushed through the open doorway and into the room where the young lady was standing. He was ordered to disrobe in order to be more thoroughly searched. While petitioner was removing his clothing, a third police officer entered the room from the rear of the apartment where he had gone upon entering and declared that he had found the "stuff" in a wastebasket in the hall of the apartment. Petitioner was subsequently indicted, tried, and convicted.

On his trial, petitioner's counsel objected to the introduction of the evidence and properly took exceptions to the court's rulings. Further argument with respect to the unconstitutionality of the evidence was raised in the New York State Court of Appeals. Subsequently, on a *coram nobis* proceeding, the County Court of Kings County expressly found it "clear that the seizure was unreasonable and in violation of the State and Federal Constitutions". People v. Eastman, 33 Misc.2d 583, 584, 228 N.Y.S.2d 156, 157 (1962).

■ I hold, first, that petitioner, on the basis of the factual situation here presented, has standing to evoke the rule enunciated in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) and thus to challenge the legality of the search and seizure and the production of its fruits on trial. The problem of standing arises from the fact that petitioner had no interest greater than that of "invitee or guest" in the premises searched. This obstacle has been surmounted by Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) and United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951).

Indeed, and in any event, Judge Sobel in his careful opinion treating the *coram nobis* application of this petitioner (People v. Eastman, supra, 33 Misc.2d at page 584, 228 N.Y.S.2d at pages 157–158) held in effect that the requisite "standing" is present upon the facts of this case, and to this extent I agree with his reasoning.

■ I do not concur, however, in his view and that of the New York appellate courts to the effect that the ruling of Mapp v. Ohio, supra, "is prospective only in operation". For reasons to be briefly discussed hereinafter, I hold that the Mapp rule is retrospective in application and that petitioner here is entitled to benefit from such application.

In so holding, I am aware that other federal courts, including this one, have reached a contrary conclusion. Their opinions and reasoning are already sufficiently well known as to render unnecessary any extended citations or discussion. Most of them have been meticulously and ably treated by Judge Metzner of this court in United States ex rel. Charles Emerick v. Denno, 220 F.Supp. 890 (S.D. N.Y.1963); see also United States ex rel. Linkletter v. Walker, 323 F.2d 11 (5th Cir. 1963).

I am persuaded to reach a contrary result upon the facts of this case for the following reasons:

(1) Most of the decisions which have thus far refused to hold Mapp retroactive have based their holdings on the ground that the Mapp rule was fashioned to deter police officers from illegally invading privacy. Thus, it is said that Mapp's purpose would not be served by applying it to prisoners whose appeals had run their course prior to its enunciation.[3] Several considerations, in my view, render this rationale unpersuasive:

In Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), the Supreme Court thought it was ensuring the security of privacy against arbitrary police intrusion, a right which it felt to be 'implicit in the concept of ordered liberty' " and thus enforceable

---

3. As had the appeals of petitioner Eastman.

against the states through the Fourteenth Amendment. 338 U.S. at 27, 69 S.Ct. at 1361, 93 L.Ed. 1782. What the Wolf court was unwilling to do at that time was to implement enforcement. It recognized that 31 states had rejected the Weeks doctrine,[4] but it felt that the right of privacy was sufficiently protected by other means, such as civil suits, criminal prosecutions and public opinion.

The Mapp decision twelve years later was at least a tacit recognition by the Supreme Court that the states were either unable or unwilling to comply with the principles laid down in the Wolf case. At the time Mapp was decided, almost half the states had still rejected the Weeks rule. 367 U.S. at 651, 81 S.Ct. at 1689, 6 L.Ed.2d 1081. The court noted that the " 'other means of protection' " which the Wolf court thought had been afforded " 'the right to privacy' " had proved "worthless" and "futile".[5]

In a very real sense, then, there is no substantial question of retrospective application. Wolf espoused the doctrine that there was a constitutional right to be free from unreasonable state intrusion upon privacy. It viewed, however, the question of admissibility of evidence as a rule or procedural problem enmeshed in a web of federal-state relations and thus refused to carry its decision to its logical conclusion. In the light of twelve years of experience, the Mapp court took the inevitable final step of stating that it was not merely a matter of evidentiary procedure but, more important, that there was a constitutional right, in existence since the Wolf case, which required full implementation in order to be completely effective, Hall v. Warden, Maryland Penitentiary, 313 F.2d 483 (4th Cir. 1963). Thus, "the only courtroom door remaining open to evidence secured by official lawlessness in flagrant

abuse of that basic right" was closed. 367 U.S. at 654–655, 81 S.Ct. at 1691, 6 L.Ed.2d 1081.

What we have in Mapp, then, is not the proclamation of a new right. Wolf had unquestionably earmarked that right, but had left the specific means of vindication open. Mapp, as I see it, has now provided for such vindication, and thus there is no bar to petitioner's obtaining relief by habeas corpus.

(2) If a more commonly held view of Mapp is taken to the effect that it represents an "overruling decision", the same result must be reached, albeit on somewhat more traditional grounds. As I understand the cases, the common law rule has been that overruling decisions apply retrospectively.[6] In discussing the soundness of this common law rule, it is unnecessary to join the debate as to the validity of statements of Blackstone and Coke. More important for our purposes is the fact that, so far as the courts of the United States are concerned, it has always been generally agreed that, upon the constitutional limitation which precludes renditions of advisory or prospective opinions, they do not make law but merely discover or declare what has been the law. See Herb v. Pitcairn, 324 U.S. 117, at pages 125–126, 65 S.Ct. 459, at pages 462–464, 89 L.Ed. 789 (1945).

■ True it is, of course, that this general rule can possibly be supervened by some paramount rule or requirement in the law such as the doctrine of *res judicata*. Principles of *res judicata* do not apply in the field of habeas corpus, however; nor can I conceive of any other paramount rule which would require abandonment of the old rule that overruling decisions apply retroactively.

(3) A number of federal courts, in passing upon the basic question of retro-

---

4. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914) wherein it was held, of course, that in a federal criminal prosecution, use of the fruits of illegal searches and seizures is barred by the Fourth Amendment.

5. See the interesting footnote No. 7 in Ker v. California, 374 U.S. 23, at page

30, 83 S.Ct. 1623, at page 1628, 10 L.Ed. 2d 726.

6. The court has the power to make its decision apply prospectively only, as it did in James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961).

activity, have determined that the Mapp rule may be invoked by a prisoner tried and convicted before its enunciation so long as his appellate proceedings are still in process as of that date. United States ex rel. Linkletter v. Walker, supra. Aside and apart from the impact of such a "cut-off date" upon the logic of the deterrence argument, it seems to me that this illustrates the enormous difficulty of rationally "drawing a line". It would appear that there should be either complete "retroactivity" or complete prospective application; unless Mapp is applied "across the board", its application logically should be confined to all searches and seizures subsequent to June 19, 1961. If petitioner had the right, which he did, to be free from arbitrary intrusions by the police at the time of his arrest, the happenstance that he had substantially concluded his appeals and other available procedures by June 19, 1961 constitutes an unconvincing bar to fair and constitutional treatment thereafter. The violation of a constitutional right is a continuing one. Thus, petitioner's right was violated not only at the times of his arrest and trial, but continues to be violated to this day while he is sitting in prison.

The Attorney General points to Sunal v. Large, 332 U.S. 174 (1947) and, most particularly, to that oftquoted passage at page 182, 67 S.Ct. 1588, at pages 1592–1593, 91 L.Ed. 1982 to the effect that habeas corpus cannot be used to correct error where a shift in the law has occurred after the time for appeal has passed. It might be sufficient to observe that Sunal involved no error of constitutional magnitude. More compelling, we are now aware of what the Supreme Court has held in Fay v. Noia, 372 U.S. 391 at page 424, 83 S.Ct. 822, at page 841, 9 L.Ed.2d 837 (1963) and specifically has said in this context:

> "[C]onventional notions of finality in criminal litigation cannot be permitted to defeat the manifest federal policy that federal constitutional rights of personal liberty shall not be denied without the fullest opportunity for plenary federal judicial review."

Further, though I agree in effect with counsel for the state that it is futile to read any particular language in the Mapp opinion pointing expressly to retrospective application,[7] recent cases dealing with vindication of constitutional rights more than adequately light the way to that, as it seems to me, inescapable conclusion. Indeed, to borrow from Chief Judge Tuttle in his dissenting opinion in United States ex rel. Linkletter v. Walker, supra, 323 F.2d at page 20: "To me the most persuasive thought which leads me to conclude that the Supreme Court did not intend to restrict Mapp to prospective application is that it did not say so".

(4) One other matter, though not directly raised upon argument here, deserves at least passing comment. Understandably, a number of decisions, plus many more prosecutors' briefs, have suggested that a holding of retroactive application of the Mapp rule will result in wholesale openings of penitentiary gates. Although facts bearing on this point have certainly not been developed here, I think it fair to register doubt that such a condition would arise. If the matter could be properly left to conjecture, I would hazard a guess that there are presently incarcerated in the State of New York, for example, less than two percent of the total number of prisoners who might properly raise the question here presented by the petitioner East-

---

7. I do not read into the Mapp decision a desire by the Supreme Court to apply it either prospectively or retrospectively although the decision was applied retroactively to Miss Mapp. Some courts have grasped at phrases such as "today", "then", and "no longer" to indicate an intention that Mapp was meant to be prospective only. Other courts point to that mysteriously ambiguous footnote 9 (367 U.S. at page 659, 81 S.Ct. at page 1693, 6 L.Ed.2d 1081) to show an intent of retrospective application. Since this question was not before the court, it is, in my view, fruitless to winnow the court's language for any clues one way or another.

682

man. See, for example, "A Comment on the Law of Search and Seizure" by Judge Nathan R. Sobel of the former Kings County Court of the State of New York. To follow the "opening the gaols" argument to its ultimate end would require a far more pessimistic appraisal of the methods by which police and prosecutors have obtained convictions in this state than any recent evidence of which I am aware warrants. But even if our jails contain a high percentage of inmates convicted by the "fruits of the poisonous tree", I read nothing in the Supreme Court's opinion in Mapp to require a result different from the one reached here.

For reasons enumerated above, I hold that Mapp v. Ohio, 367 U.S. 643, 81 St.Ct. 1684, 6 L.Ed.2d 1081 (1961) applies to a prisoner who has been arrested, tried, convicted and has exhausted his appeals prior to Mapp, but subsequent to Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), where that prisoner is currently serving his term.

The writ is granted and petitioner is ordered discharged from custody on this judgment of conviction. So ordered.