**Joseph Aguilar GAITAN, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

No. 7270.

United States Court of Appeals
Tenth Circuit.

April 22, 1963.

Rehearing Denied June 19, 1963.

Leonard Ripps, Denver, Colo., for appellant.

Lawrence M. Henry, U. S. Atty. for Dist. of Colorado (Michael C. Villano, Asst. U. S. Atty. for Dist. of Colorado, with him on the brief), for appellee.

Before MURRAH, Chief Judge, and BREITENSTEIN and HILL, Circuit Judges.

BREITENSTEIN, Circuit Judge.

For the third time appellant Gaitan seeks relief from his conviction on narcotics charges. In a direct appeal from the judgment of conviction he contended that his Fourth Amendment rights had been denied by the rejection of his motion, under Rule 41(e), F.R.Crim.P., to suppress evidence consisting in part of a quantity of marijuana illegally seized from his premises by local police officers. Over objection, the marijuana was received in evidence against him. The conviction was affirmed, Gaitan v. United States, 10 Cir., 252 F.2d 256, under the then recognized silver platter doctrine.[1] Certiorari was denied, 356 U.S. 937, 78 S.Ct. 779, 2 L.Ed.2d 812.

After the decisions in Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4

1. Weeks v. United States, 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652; Gallegos v. United States, 10 Cir., 237 F.2d 694, 696. See also Lustig v. United States,

338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819, and Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520.

L.Ed.2d 1669, and Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688, overturning the silver platter doctrine, Gaitan brought a proceeding under 28 U.S.C. § 2255 for relief from the conviction on the ground that the receipt in evidence of the illegally seized marijuana violated the Fourth Amendment. The trial court denied relief and its judgment was affirmed by this court in Gaitan v. United States, 10 Cir., 295 F.2d 277, the decision holding that there was no question as to the jurisdiction over the person and the offense; that the sentence was within the statutory limit; and that the admissibility of the evidence was res judicata as between Gaitan and the United States.[2] Certiorari was again denied, 369 U.S. 857, 82 S.Ct. 939, 8 L.Ed. 2d 15.

In the instant application, his second under § 2255, Gaitan contends that a Western Union money order receipt was wrongfully received in evidence because it had been illegally seized by local officers,[3] and that its use against him violated the provisions of the Fifth Amendment relating to self-incrimination. In denying relief, without a hearing, the court below found, from the record of the narcotics trial, that the money order receipt had been received in evidence at the trial without any objection. Such finding is not contested.

■■ A § 2255 proceeding is a collateral inquiry into the validity of a conviction,[4] commensurate with the remedy previously available by habeas corpus,[5]

and the grounds for relief are limited to those which may be raised on collateral attack.[6] This court has consistently held that errors in the admission of evidence must be reviewed on appeal and do not afford a basis for collateral attack.[7]

■ In Bowen v. Johnston, Warden, 306 U.S. 19, 24, 59 S.Ct. 442, 83 L.Ed. 455, the Supreme Court held that habeas corpus was available when, in the trial proceedings, the accused's constitutional rights had been denied. The same principle applies to a § 2255 proceeding. As we read Elkins, the rejection of the silver platter doctrine is not placed on constitutional grounds but rather on the Court's supervisory power over the administration of criminal justice in the federal courts, under which the Court has, "from the very beginning of its history, formulated rules of evidence to be applied in federal criminal prosecutions."[8] If all we have in the instant case is a change in the rules of evidence, on other than constitutional grounds, the § 2255 remedy is an impermissible collateral attack.

■ Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, was concerned with the admissibility of illegally seized evidence in a state criminal trial. In overruling Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, and in holding the exclusionary rule applicable to state court prosecutions, the opinion of the Supreme Court rejects the theory that such rule is a rule of evidence and holds that it "is an essential part of both

2. The case was heard in the court of appeals after the decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, and the court found nothing in the Mapp decision which destroyed the validity of Gaitan's conviction.

3. While the record is not entirely clear and we are aided by no finding of the trial court, we are satisfied that the receipt was taken from Gaitan's premises by local officers at the time they searched those premises without a search warrant, and that the general language of the motion to suppress included that receipt.

4. United States v. Hayman, 342 U.S. 205, 222, 72 S.Ct. 263, 96 L.Ed. 232.

5. Hill v. United States, 368 U.S. 424, 427, 82 S.Ct. 468, 7 L.Ed.2d 417.

6. Kreuter v. United States, 10 Cir., 201 F.2d 33, 35.

7. McLester v. United States, 10 Cir., 306 F.2d 880, 881; Way v. United States, 10 Cir., 276 F.2d 912, 913; Barber v. United States, 10 Cir., 197 F.2d 815, certiorari denied 344 U.S. 857, 73 S.Ct. 94, 97 L.Ed. 665; and Bozel v. Hudspeth, 10 Cir., 126 F.2d 585, 587.

8. 364 U.S. 206, 216, 80 S.Ct. 1437, 1443, 4 L.Ed.2d 1669, quoting from McNabb v. United States, 318 U.S. 332, 341, 63 S.Ct. 608, 87 L.Ed. 819.

the Fourth and Fourteenth Amendments." [9] Mr. Justice Black in his concurring opinion says that "when the Fourth Amendment's ban against unreasonable searches and seizures is considered together with the Fifth Amendment's ban against compelled self-incrimination" a constitutional basis emerges for the exclusionary rule.[10] Although the Mapp decision does not directly overrule the Elkins holding that the exclusionary rule is a rule of evidence within the control of the supervisory power of the Supreme Court, and although Mapp discloses no agreement among a majority of the Court as to the constitutional basis for the exclusionary rule, we take it that, under Mapp, the issue of the admissibility of illegally seized evidence has a constitutional basis and, hence, the § 2255 remedy is available.

We are asked to re-examine our decision on the appeal from the denial of the first § 2255 application in the light of Hall v. Warden, Maryland Penitentiary, 4 Cir., 313 F.2d 483. In that habeas corpus proceeding, brought by a defendant convicted in state court and sentenced to death, the federal court was faced with a situation wherein, prior to Mapp, a state supreme court had affirmed a conviction after a trial in which illegally seized evidence was used. The Fourth Circuit granted relief, saying that the Mapp rule had retroactive application. The court placed controlling emphasis on the point that, between the decisions in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, and the decision in Mapp, no

change had been made in the constitutional requirements found controlling in Mapp. The court said: "It must be recognized that, since Weeks and Wolf, there had been no change in the constitutional requirements of due process considered and found controlling in Mapp. If the protections are there now, were they not present when Wolf was decided and were they not present when Hall was tried, convicted and sentenced? An affirmative answer would appear to be inescapable."

We can answer the question presented to us with no such assurance.[11] The issue is not the admissibility of the illegally seized evidence. Rather the issue is whether due process of law, as guaranteed by the Fifth Amendment, requires the voiding of Gaitan's conviction because of a subsequent decisional change in the interpretation of the Constitution. We are aware of no controlling decision of the Supreme Court.

In Vandenbark v. Owens-Illinois Glass Company, 311 U.S. 538, 543, 61 S.Ct. 347, 350, 85 L.Ed. 327, the Supreme Court said that federal trial and appellate tribunals "should conform their orders to the state law as of the time of the entry." The same principle applies to federal law.[12] At the time Gaitan was tried and at the time his appeal from the judgment of conviction was heard, the law of the land permitted the receipt of the evidence with which we are concerned. The Supreme Court now says that such evidence is not admissible. The decisions permitting admissibility and the decisions denying admissibility were render-

---

9. 367 U.S. at 657, 81 S.Ct. at 1692.

10. 367 U.S. at 662, 81 S.Ct. at 1695.

11. In Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S. Ct. 317, 84 L.Ed. 329, the Supreme Court was faced with a case wherein a prior decree was pleaded as res judicata. The lower courts denied the plea on the ground that the statute under which it had been entered had subsequently been held unconstitutional by the Supreme Court and, hence, the statute was inoperative, conferred no rights, and imposed

no duties. The Supreme Court reversed, saying (308 U.S. 374, 60 S.Ct. 318): "It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration."

12. Stanley v. United States, 6 Cir., 249 F. 2d 64, 66.

[redacted] 

ed by the same tribunal. The assertion that the later decisions were always the law departs from reality. Under the decisions controlling at the time of Gaitan's trial and appeal, the district court had the power to receive the evidence and the court of appeals had the duty to uphold that power. A subsequent denial of the power does not mean that the power never existed.[13] Stability of judicial administration is strengthened by the application of the due process principle in accordance with the law existing at the time of the judicial decision determining rights and responsibilities. Contrariwise, that stability is weakened if due process requires the retroactive application of decisional changes in the common law, of changes in statutory law, of changes in statutory construction, of changes in the Constitution, and of changes in constitutional interpretation, to invalidate antecedent final judgments.

We find nothing in Elkins, Rios, or Mapp which says whether those decisions should be applied retroactively or prospectively. The Supreme Court was concerned with the cases then before it and the question of the application of those decisions to cases which had previously gone to final judgment was not presented. We have such a case and must resolve the problem with full recognition that only the Supreme Court can give the final answer.

In the Hall decision, the Fourth Circuit notes that the Supreme Court did not limit Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, to prospective operation although the concurring opinion of Mr. Justice Frankfurter urged that it do so, and further notes the retroactive application of the Griffin rule in Eskridge v. Washington State Board of Prison Terms and Paroles, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269. Those cases were concerned with the constitutional right of an indigent to a free transcript of his criminal trial so that he could perfect an appeal. They did not overturn any previous decisions interpreting the Federal Constitution. Eskridge does not say that the Griffin rule must be applied retroactively in all situations.[14]

The question of the impact of due process on situations wherein a decisional change has been made in the applicable law has arisen before. In Great Northern Railway Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360, the Supreme Court held that it is for the state courts to decide whether changes in their views of the common or statutory law shall apply to intermediate transactions, and, in an opinion by Mr. Justice Cardozo, said:[15] "The choice for any state may be determined by the juristic philosophy of the judges of her courts, their conceptions of law, its origin and nature." The same problem is presented here. On the one hand we have the idea that the latest interpretation of the Constitution is what the Constitution has always said and meant. On the other hand is the practical realization that the interpretation of the Constitu-

13. See Warring v. Colpoys, 74 App.D.C. 303, 122 F.2d 642, 647, 136 A.L.R. 1025, certiorari denied 314 U.S. 678, 62 S.Ct. 184, 86 L.Ed. 543, where the court affirmed this principle and, speaking through Judge, later Chief Justice, Vinson, said: "It has often been said that the living should not be governed by the dead, for that would be to close our eyes to the changing conditions which time imposes. It seems even sounder to say that the living should not be governed by their posterity, for that, in turn, would be downright chaotic."

14. At the moment the value of Eskridge as a precedent for retroactive application of the Griffin rule is questionable. In People v. Norvell, 25 Ill.2d 169, 182 N.E.2d 719, the Supreme Court of Illinois denied the retroactive application of Griffin and the Supreme Court granted certiorari, 371 U.S. 860, 83 S.Ct. 135, 9 L.Ed.2d 98. See also memorandum of Mr. Justice Harlan on denial of certiorari in Patterson, Warden v. Medberry, 368 U.S. 839, 82 S.Ct. 59, 7 L.Ed.2d 39. We believe that until the situation is clarified Eskridge must be confined to its particular facts.

15. 287 U.S. 365, 53 S.Ct. 149.

[redacted]

tion changes and has changed from time to time.

In at least two cases, the Supreme Court has denied relief from convictions in connection with which a change in judicial decision has occurred. Patterson v. Colorado, 205 U.S. 454, 461, 27 S.Ct. 556, 557, 51 L.Ed. 879, was a state contempt case in which Mr. Justice Holmes, speaking for the Court, said:

"* * * But in general the decision of a court upon a question of law, however wrong and however contrary to previous decisions, is not an infraction of the Fourteenth Amendment merely because it is wrong or because earlier decisions are reversed."

In Sunal v. Large, Superintendent, Federal Prison Camp, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982, the situation was that the defendant had not taken an appeal from a conviction because, under the then construction of a federal statute, his counsel deemed the appeal futile. Later, that construction was changed. Sunal brought habeas corpus and the Supreme Court denied relief saying: [16] "Error in ruling on the question of law did not infect the trial with lack of procedural due process." Thus, the rule of Patterson was applied to the federal courts.[17]

The difference between the cases just mentioned and the case at bar is that they dealt with decisional changes either in the realm of common law or in statutory construction whereas here we are concerned with a change in constitutional interpretation. So far as the man in prison is concerned, the difference is esoteric.

A change in constitutional interpretation does not justify or require a different result than that pertaining to a change in the Constitution itself. After the repeal of the Eighteenth Amendment by the Twenty-first Amendment, the Supreme Court was confronted with a case wherein the defendants were indicted for violations of the National Prohibition Act. Their case was set for trial the day after the ratification of the Twenty-first Amendment and they attacked the jurisdiction of the court. The trial judge dismissed the indictment and the Supreme Court affirmed but in so doing said, in an opinion by Mr. Chief Justice Hughes, United States v. Chambers, 291 U.S. 217, 226, 54 S.Ct. 434, 436, 78 L.Ed. 763:

"What we have said is applicable to prosecutions, including proceedings on appeal, continued or begun after the ratification of the Twenty-first Amendment. We are not dealing with a case where final judgment was rendered prior to that ratification. Such a case would present a distinct question which is not before us."

In Welch v. Hudspeth, 10 Cir., 132 F.2d 434, 436, this court denied habeas corpus relief to a defendant who was sentenced for a prohibition violation prior to repeal. In reaching the same conclusion, the Second Circuit said, United States ex rel. Randall v. United States Marshal for Eastern Dist. of New York, 2 Cir., 143 F.2d 830, 831:

"When the defendant was sentenced and the judgment against him was affirmed and no application for a writ of certiorari was made within the period allowed by statute

---

16. 332 U.S. 174, 182, 67 S.Ct. 1588, 1593.

17. Two circuits have held that decisional changes do not justify relief by habeas corpus or under § 2255. In Warring v. Colpoys, 74 App.D.C. 303, 122 F.2d 642, 136 A.L.R. 1025, certiorari denied 314 U.S. 678, 62 S.Ct. 184, 86 L.Ed. 543, a change in statutory construction by the Supreme Court destroyed the jurisdiction of the court but habeas corpus was denied. United States v. Gandia, 2 Cir.,

255 F.2d 454, denied relief in a § 2255 proceeding based on the claim that the Jencks rule (Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103) had retroactive application and, hence, petitioner was denied a fair trial. In Stanley v. United States, 6 Cir., 249 F.2d 64, upon motion for reconsideration, retroactive application of the Jencks rule was denied.

judicial action became final and the repeal of the prohibition amendment did not under the following authorities affect the rights of the parties." [18]

■ The prohibition cases are distinguished from the case at bar only by the fact that they dealt with a change in the Constitution rather than a change in the interpretation of the Constitution. From the standpoint of due process the distinction is unimportant. No more reason exists for upsetting a final judgment because of a decisional change than exists when the basic law itself is changed.

The final judgment against Gaitan was appealed and affirmed and certiorari was denied. If habeas corpus can be used to overthrow that judgment, "the writ would become a delayed motion for a new trial, renewed from time to time as the legal climate changed." [19] We find nothing in Fay v. Noia, 371 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, or Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770, which detracts from the recognized rule that habeas corpus and its federal counterpart provided in § 2255 are not substitutes for an appeal.[20]

Not only has Gaitan had an appeal from his sentence but also he has taken one application for relief under § 2255 all the way to the Supreme Court—and that application squarely raised the question of the retroactive application of the Elkins rule.[21] In the circumstances we are convinced that the judgment of the district court was correct.

Affirmed.

18. The Second Circuit cites six decisions of courts of appeals on two of which certiorari was denied by the Supreme Court.

19. Sunal v. Large, Superintendent, Federal Prison Camp, 332 U.S. 174, 182, 67 S.Ct. 1588, 1592, 91 L.Ed. 1982.

20. Adams, Warden v. United States ex rel. McCann, 317 U.S. 269, 274, 63 S.Ct. 236, 87 L.Ed. 268.

21. Elkins was decided on June 27, 1960, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669, and Mapp on June 19, 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. The Supreme Court denied certiorari on Gaitan's first § 2255 application on April 16, 1962, 369 U.S. 857, 82 S.Ct. 939, 8 L.Ed.2d 15, with the notation that Mr. Justice Douglas believed that certiorari should be granted.