**STATE OF LOUISIANA ex rel. Lloyd MILES, Joseph Potts, and Leroy Davis**

**v.**

**Victor G. WALKER, Warden, Louisiana State Penitentiary.**

**No. 669.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Oct. 31, 1963.

David D. Moss, Baton Rouge, La., for petitioners.

Jack P. F. Gremillion, Atty. Gen., Teddy W. Airhart, Asst. Atty. Gen., Baton Rouge, La., Frank J. Klein, Asst. Dist. Atty., Parish of Orleans, New Orleans, La., for respondent.

WEST, District Judge.

Petitioners, Lloyd Miles, Joseph Potts, and Leroy Davis, were arrested in New Orleans, Louisiana, on December 18, 1956, and charged, on a bill of information, with two counts of violation of Louisiana Criminal Statutes pertaining to illegal possession of narcotic drugs and hypodermic needles. Upon arraignment, all three pleaded not guilty. On the day of the trial, March 26, 1957, after the jury was sworn and after opening statements had been made by counsel, petitioner, Joseph Potts, through his counsel, and with consent of Court, withdrew his plea of not guilty and entered a plea of guilty. The trial of the remaining two defendants proceeded, and at the conclusion thereof, the jury found Miles and Davis guilty as charged on both counts contained in the bill of information. All three defendants were then sentenced to serve fifteen years in the Louisiana State Penitentiary. Post conviction remedies in the state courts were exhausted by November 22, 1957. This application for the issuance of a writ of habeas corpus was filed in this Court some five years later, based upon the contention that relators were illegally arrested in 1957 without a warrant, and that evidence which was obtained at the time of the arrest was illegally obtained without a search warrant, and was improperly used against them during their trial. They contend that under the holding of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, decided by the United States Supreme Court in June, 1963, their conviction was thus obtained in violation of their constitutionally guaranteed rights. This Court appointed counsel to represent petitioners, and a plenary hearing was held herein. After due consideration of the testimony thus adduced before this Court, and after a thorough review and consideration of the entire record in this matter, this Court concludes that the applications for the issuance of writs of habeas corpus herein must be denied.

The arrest of petitioners was precipitated by a telephone call received by the New Orleans Police Department on December 18, 1957, from an anonymous person who informed them that "three well known dope fiends" were using dope in Apartment 15 at 1817 Toledano Street in New Orleans, Louisiana. Pursuant to this telephone call, four officers of the New Orleans Narcotics Squad immediately proceeded to 1817 Toledano Street and placed the premises under surveillance. Upon arriving at the scene, they observed a colored female standing on an upstairs balcony, pointing to Apartment 15. They did not obtain her name, but assumed it was the person from whom they had received the telephone call. One of the officers proceeded to the rear entrance of the building, and the other three remained at the front entrance. They remained at these positions for about ten minutes, during which time they heard noises inside, indicating that people were moving about and they then heard what they believed to be someone placing timbers or heavy objects against the inside of the front door. The window next to the front door was open, but the Venetian blind was drawn. There was a screen on the outside of the window. One of the officers carefully pulled the screen open at the bottom and lifted the Venetian blind to look into the room. As he did so, he came almost face to face with relator, Leroy Davis, whom he immediately recognized and well knew to be a dope addict. At the same time he also saw petitioners, Miles and Potts, in the kitchen. He saw them hurriedly pick up capsules of what he believed to be heroin from the table and throw them into the sink. These petitioners were also immediately recognized by the officer as known dope addicts. Upon seeing petitioners attempting to destroy the evidence, the officer at the window called to the other two officers to force the

door open. The two officers at the door then broke open the door, which had been barred on the inside by a piece of lumber, and the three officers entered through the door and immediately placed all three petitioners under arrest. A systematic search of the two room apartment was then made and about 20 capsules of white powder (later identified as heroin), a "cooker", a hypodermic needle, a medicine dropper, and a balloon, all paraphernalia used in administering heroin to an addict, were found and preserved as evidence. Some of the capsules were recovered by removing the gooseneck from the drain of the sink and extracting the capsules therefrom. All of this evidence was ultimately used against petitioners during their trial.

All of the police officers involved were quite well acquainted with these three petitioners and knew them to be dope addicts. These officers had, on prior occasions, been instrumental in bringing about the conviction of Miles on a federal narcotics violation, and they had arrested all three of these petitioners on numerous occasions previously in connection with possessing and using narcotics.

■ The exclusionary rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081, has no application to this case, inasmuch as the arrest and conviction of petitioners took place, and became final, years before Mapp was decided. Mapp is not to be applied retroactively. The exclusionary rule contained therein does not apply where the prosecution relied on Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, the law of the land prior to Mapp, and obtained a conviction that had become final before Mapp. United States ex rel. Linkletter v. Walker, et al. (5 Cir.) 323 F.2d 11; Commonwealth ex rel. Wilson v. Rundle, Pa., 194 A.2d 143; Gaitan v. United States, (10 Cir.) 295 F.2d 277. The legality of the arrests and the subsequent search and seizure must therefore be determined by state law. Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332; Johnson v United States, 333 U.S. 10,

68 S.Ct. 367, 92 L.Ed. 436; United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210.

■■ It is settled beyond question that an arrest may be made without a warrant when a felony is being committed in the presence of an officer, or if the officer has reasonable cause to believe that a felony has been committed, and reasonable cause to believe that such person has committed it. LSA–R.S. 15:60. Where an officer is apprised by any of his senses, i. e., sight, hearing, touch, smell, etc., that a crime is being committed, it is considered as being committed in his presence so as to justify an arrest without a warrant. Under Louisiana law where there exists probable cause or surrounding suspicious circumstances, an officer is justified in making an arrest without a warrant. McBride v. United States, (5 Cir.), 284 F. 416; O'Malley v. Whitaker, et al., 118 La. 906, 43 So. 545; Barfield v. Marron, 222 La. 210, 62 So.2d 276; Johnson v. Hodges, (La.App.), 65 So.2d 812. As stated by this Court, in State of Louisiana ex rel. Naylor v. Walker, D.C., 206 F.Supp. 544, 546:

"Probable cause has been defined as a reasonable grounds for belief of guilt. It exists where the facts and the circumstances within the officer's knowledge are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879."

■ Ordinarily, an anonymous "tip" or telephone call from an unknown informer is not sufficient, in itself, to constitute reasonable cause for making an arrest without a warrant. Costello v. United States, (9 Cir.), 298 F.2d 99; Rodgers v. United States, (9 Cir.), 267 F.2d 79; Wrightson v. United States, 95 U.S.App.D.C. 390, 222 F.2d 556; Contee v. United States, 94 U.S.App. D.C. 297, 215 F.2d 324. However, in this

case, the arrest was not made solely on the basis of an anonymous telephone call. The call merely resulted in the premises being placed under surveillance, and then, the arrest was finally made because the surrounding circumstances led the officers to believe that a felony was being committed by petitioners. The stake out of the premises, resulting from the anonymous telephone call, led to reasonable grounds for making the arrest, and hence the arrest was legal. State v. Aias, 243 La. 945, 946, 149 So.2d 400; State v. Calascione, 243 La. 993, 149 So.2d 417.

 The fact that the officers went upon the premises where the offense was being committed before they had probable cause to believe that a felony was being committed did not, under Louisiana law, render the ensuing arrest illegal. Neither was the arrest made illegal because of the fact that the police officers gained entrance to the apartment by forcing open the door without first announcing their presence. Williams v. United States, (9 Cir.) 273 F.2d 781; State v. Aias, supra. It having been decided that the arrest under Louisiana law was legal, it necessarily follows that the search and seizure made incident thereto was also legal. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L. Ed.2d 327; United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; State v. Aias, supra.

But even if it should be held that, pursuant to federal standards, rather than applying state standards, the evidence used against petitioners at their trial was illegally obtained, that fact would be of no avail to these petitioners. Such evidence was, at the time of their arrest and conviction, admissible in a state court proceeding under what was then the law of the land. Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782. Hence, its use during the trial is not grounds for annulling or setting aside the conviction thus obtained. And lastly, insofar as petitioner Joseph Potts is concerned, even if the evidence referred to was il-

legally seized and illegally used during the trial of Miles and Davis, such would be of no help to Potts. He pleaded guilty before trial. Objections to arrests and the nature of the evidence obtained by and available to the prosecution will not survive a plea of guilty in open court and are not available on application for a writ of habeas corpus or on the statutory motion to have the judgment set aside. Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690; Sullivan v. United States, (10 Cir.) 315 F.2d 304; Adkins v. United States, (8 Cir.) 298 F.2d 842; United States v. Zavada, (6 Cir.) 291 F.2d 189; United States v. Salzano, D.C., 138 F.Supp. 72, affirmed (2 Cir.) 241 F.2d 849; Winston v. United States, (2 Cir.) 224 F.2d 337; United States v. Williams, (7 Cir.) 212 F.2d 786; Blood v. Hunter, (10 Cir.) 150 F.2d 640; Way v. United States, D.C., 200 F.Supp. 539.

For the reasons herein stated, the application of petitioners for the issuance of writs of habeas corpus must be denied.