Wendell Austin PETERS, Petitioner,

v.

Frank C. DILLON, Chief, Probation Department, City and County of Denver, State of Colorado, Respondent.

Civ. A. No. 8174.

United States District Court
D. Colorado.

Jan. 3, 1964.

488

Fugate, Mitchem, McGinley & Hoffman, Roger F. Johnson, Allen P. Mitchem, Denver, Colo., for petitioner.

Bert M. Keating, Dist. Atty., Second Judicial Dist., Colorado, Theodore A. Borrillo, Deputy Dist. Atty., Denver, Colo., for respondent.

ARRAJ, Chief Judge.

This matter is before the Court on petition for writ of habeas corpus. A Show Cause Order was issued on September 18, 1963, and respondent's answer and petitioner's traverse have since been filed. A hearing was had on December 18, 1963, at which counsel for both sides presented an able and complete argument on the questions raised.

Petitioner was convicted of the charge of larceny by bailee in the District Court in and for the City and County of Denver on May 16, 1961. The conviction was affirmed on November 5, 1962, by the Colorado Supreme Court, 376 P.2d 170 (Colo.1962). Petitioner contends here that evidence indispensable to that conviction was obtained by an illegal search and seizure and that by virtue of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), its use at trial constituted a violation of his rights to due process as guaranteed by the Fourteenth Amendment to the United States Constitution. Respondent takes no position concerning the legality of the

search and seizure, but contends that petitioner has not exhausted his state remedies and is therefore not properly before this Court, and that even if this Court does have jurisdiction, Mapp v. Ohio cannot be applied retroactively in this case, relying on Gaitan v. United States, 317 F.2d 494 (10th Cir.1963).

In view of the disposition we have presently chosen to make of this matter, it is not necessary to set forth in detail the facts surrounding the alleged search and seizure. The objections of respondent, however, will be dealt with at some length.

I.   Exhaustion of State Remedies.

■   28 U.S.C. § 2254 requires that all available state remedies be exhausted before habeas corpus can issue from this Court. Inasmuch as this requirement is jurisdictional in character, a determination must be made that it has been fulfilled.

■   Though respondent has not argued these questions in his answer, it seems proper to observe here that petitioner's failure to apply for certiorari to the United States Supreme Court or to apply for a writ of habeas corpus in the Colorado courts does not bar his petition here. As to the former, see Fay v. Noia, 372 U.S. 391, 435–438, 83 S.Ct. 822, 847–848, 9 L.Ed.2d 837 (1963). As to the latter, it seems clear that even a cursory review of Colorado law on habeas corpus indicates that it would not afford a remedy for this petitioner. As noted by Professor Austin Scott in a survey of post-conviction remedies in Colorado,

"The Colorado law, then, seems clear: habeas corpus will *never* lie to afford relief from a conviction obtained at a trial at which any of the defendant's federal or state constitutional procedural rights have been violated, so long as the trial court in question had jurisdiction over the crime and over the defendant and imposed a sentence within statutory limits. No matter how unfair the trial, no matter what constitutional rights were violated, habeas corpus cannot be used to remedy the wrong." Scott, Post-Conviction Remedies in Colorado Criminal Cases, 31 Rocky Mt.L.Rev. 249, 256–57 (1959).

Respondent's contention that petitioner may still avail himself of a motion under Colo.R.Crim.P. 35(b) raises a more difficult question, since it is clear that the Rule was intended to fill the void created by the narrowness of the Colorado concept of habeas corpus above described by creating an entirely new post-conviction remedy. See Symposium, The Colorado Rules of Criminal Procedure, 34 Rocky Mt.L.Rev. 66–78 (1961). However, a determination whether petitioner would come within the scope of that Rule is handicapped by the fact that the Rule is so new that the Colorado Supreme Court has not yet had an opportunity to fully construe it.[1]

1.   In Matz v. Tinsley, D.Colo., Civil No. 7987 D.Colo., July 30, 1963, we observed: "We find only one case in which the Colorado Supreme Court has had occasion to have reference to Rule 35(b), and there the Court did not find it necessary to comprehensively review the Rule. See Hudspeth v. People, 375 P.2d 518 (Colo.1962)  *  *  *  In this regard, since Fay v. Noia (372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963)) was decided, we think the Colorado Court may find persuasive the recent opinions of the United States Supreme Court construing federal post-conviction remedies, see especially Fay v. Noia, supra, Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) and Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed. 2d 148 (1963), particularly in view of the fact that the state proceedings for habeas corpus and under Colo.R.Crim. P. 35 appear to be so similar to the federal provisions under 28 U.S.C. 2254 and 2255 which were construed in the above cited cases."

The very few cases which have since then mentioned the Rule, see, e. g., Stilley v. Tinsley, 385 P.2d 677 (Colo.1963) in which the Court only made a passing reference to the Rule at p. 689, fall into the same category as Hudspeth. The scope of Rule 35(b) therefore remains unresolved.

A recital of the procedural steps taken by petitioner in the Colorado courts to raise the question which is crucial to his petition here and the times such steps were taken should be helpful in reaching such a determination. The alleged search and seizure and the trial of petitioner both took place before the decision of Mapp v. Ohio was rendered; the jury returned its verdict on May 16, 1961, and Mapp was not decided until June 19, 1961. Sentence, however, had not been imposed on petitioner as of the time Mapp was decided, a motion for a new trial being pending at that time. An amended motion for a new trial was filed on August 2, 1961, in which petitioner requested a new trial or a special hearing to determine whether the evidence here complained of had been illegally seized. On September 8, 1961, after the amended motion for new trial had been denied but before judgment had been entered, petitioner filed a motion requesting the trial court to reopen the case for the taking of testimony relating to the competency and admissibility of the evidence which had been obtained by the search and seizure in question.

Petitioner made no motion to suppress this evidence before or during trial, nor was any evidence adduced at trial on the specific issue of the alleged illegal search and seizure "because," as petitioner alleges, "of the then status of Colorado local law permitting the admissibility of illegally seized evidence * * *." The trial court, therefore, heard no evidence on the search and seizure as such, and in denying petitioner's amended motion for a new trial it rejected an opportunity to hold such a hearing. It rejected a second such opportunity when it denied the motion made on September 8, just before petitioner was sentenced, that the case be reopened for the taking of testimony on this point. The Colorado Supreme Court, on the Writ of Error seasonably brought by petitioner, held as follows:

"We conclude that the decision of the Supreme Court of the United States went no farther than to exclude in the state courts the use of evidence obtained by way of an unreasonable search and seizure as forbidden by the Fourth Amendment to the United States Constitution. It does not exclude all evidence which might be obtained as an incident to a lawful arrest, nor does it preclude the admission of all evidence which may have been obtained without the sanction of a search warrant. The evidence before the court clearly indicated a permissive search and there is nothing whatever in the record to indicate 'an unreasonable search and seizure' within the coverage of Mapp v. Ohio, supra." Peters v. People, 376 P.2d 170, 175 (Colo. 1963).

On petition for rehearing to the Colorado Supreme Court, petitioner objected to the above language noting that:

"Defendant merely seeks an opportunity for a hearing on the issues presented by his 'motion to Suppress.' Defendant admits that the record does not specifically reflect an unreasonable seizure; the Defendant was never given the opportunity to present such evidence. (See Defendant's Opening Brief, p. 79 and Reply Brief, pp. 15–17.) *The Trial Court ruled on the substantive merits of the Defendant's motion without allowing evidence to be offered in support of the motion (f. 1431).* We would assert that the record taken as a whole shows that Defendant was not within 100 miles of Denver when his office was raided (the day after his home was searched) by police officers; Exhibits A, P and O, taken from the office without benefit of a warrant or any conceivable permission of the absent Defendant (ff. 588–598)."

The petition for rehearing was denied.

On February 14, 1963, a motion to suppress certain evidence was granted by Judge Keating of the Denver District Court in Criminal Action No. 48873 and that action was dismissed. Although that action was admittedly different from that of which petitioner was convicted,

he contends that the evidence used to obtain the conviction complained of here was seized "* * * *in the same raids* * * *under the identical circumstances* and at the same times and from the *same locations as the searches which were made*" with respect to the evidence in this case.

It is on the basis of this unusual set of circumstances that a decision must be made as to whether petitioner could succeed in bringing an action under Colo.R.Crim.P. 35(b) in the Colorado state courts. If it appears that petitioner could bring such an action, he has not exhausted his state remedies within the meaning of 28 U.S.C. § 2254. If he could not bring such an action, he may be deemed to have exhausted state remedies still available to him, and his petition for writ of habeas corpus would, therefore, be properly before this Court. Though it may be objected that only the Colorado courts can properly determine whether a 35(b) motion would lie, it is the duty of this Court to make an independent determination of whether petitioner has exhausted state remedies still available to him. This Court, therefore, especially in view of the short time in which this question may be resolved, a point which will be elaborated below, must proceed to determine what the Colorado courts would do if presented this question on a 35(b) motion.

Crucial to this question, we feel, is the holding of the Colorado Supreme Court above quoted. Although respondent has argued in his answer that the trial court was correct in denying petitioner's motion for a hearing on the legality of the contested search and seizure and that because of the improper procedure employed by petitioner the issue was never properly before the state courts, our reading of the Supreme Court opinion leads us to the conclusion that the question was decided not on a procedural basis, but that the Court reached a conclusion on the substantive issue of the legality of the search and seizure. And though respondent argued orally at the hearing here that this portion of the Supreme Court's decision was only dictum and therefore not binding upon a trial court, it is, in our view, stated in such a way that a trial court would be disposed to follow it. Indeed, we would expect that, under ordinary circumstances, a trial court would feel bound by the decision and would therefore deny a motion made pursuant to Colo.R.Crim.P. 35(b) on the grounds that the Colorado Supreme Court had already decided the question. A federal district court in Pennsylvania, faced with circumstances somewhat analogous to those in the present case,[2] held as follows on this question:

"* * * for all practical purposes the petitioner has exhausted his State remedies * * * it would be useless to require that he raise collaterally in the State courts the same question which already has been raised and rejected in the direct proceeding there." United States v. Rundle, 219 F.Supp. 549, 554 (E.D. Pa. 1963) (relying on Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), Brown v. Allen, 344 U.S. 443, 447–450, 73 S.Ct. 397, 402–403, 97 L.Ed. 469 and other cases)

Accordingly, we hold that an action under 35(b) is not a remedy still available to petitioner and that he has therefore exhausted the state remedies still available to him within the meaning of 28 U.S.C. § 2254, as construed by Fay v.

---

2. There, objection was made to admission of the evidence at trial, and petitioner was found guilty on the same day Mapp was handed down. Sentence, however, was deferred pending motions for new trial and in arrest of judgment. Petitioner's motion filed prior to sentencing to quash the search warrant and to suppress the evidence, specifically relying on Mapp, was dismissed and petitioner was later sentenced. On appeal, his argument was rejected on the grounds that Mapp was not retroactive. He thereafter did not seek habeas corpus in the state courts, but brought his petition directly to the federal district court.

Noia, supra. His petition is consequently properly before this Court.

## II. Retroactivity of Mapp v. Ohio.

■ The arguments of both petitioner and respondent have put in issue the question whether Mapp v. Ohio should be applied retroactively to this situation. Our first inclination on this point was that it was unnecessary to decide. Indeed, the decision of the Colorado Supreme Court in this case that "there is nothing whatever in the record to indicate 'an unreasonable search and seizure' within the coverage of Mapp v. Ohio, supra." Peters v. People, 376 P.2d 170, 175 (Colo. 1963) can be reasonably construed, we think, to mean that the Colorado Supreme Court decided that Mapp was applicable to this factual situation. In this respect, the case seems analogous to Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171, in which the United States Supreme Court merely noted without discussion that the Connecticut Supreme Court of Errors "held that the Mapp decision applies to cases pending on appeal in Connecticut courts at the time that decision was rendered." Certainly, even if Mapp were eventually held not to be retroactive,[3] the states would be free to make it retroactive if they wished to do so. However, if we declined to decide whether Mapp should be applied to this case on a constitutional basis, we could proceed no further, for this Court on a petition of habeas corpus from one held in state custody can consider only federal constitutional questions, and if we considered the question to rest merely on state law, we would be without authority to make our own independent determination. We, therefore, are obliged to reach directly the question of the applicability of Mapp.

At the outset of this inquiry, it is necessary to determine whether Gaitan v. United States, 317 F.2d 494 (10th Cir. 1963), the first case concerning the retro-activity of Mapp in this Circuit, is controlling here. In that case, the Court held that Mapp was not retroactive by compulsion of the Constitution to a judgment which had become final before Mapp was decided. After an extensive examination of Gaitan and other relevant authorities, we conclude that it is not decisive here for the reasons stated below.

Starting with the premise established by Gaitan that Mapp is not retroactive by compulsion of the Constitution, it must next be determined at what point its application would be retroactive. In surveying the authorities on this point, it becomes obvious that the question is susceptible to becoming obscured by problems of semantics. A definition of terms thus is a prerequisite to clarity. One example of such definition is found in United States v. Walker, 323 F.2d 11 (5th Cir. 1963). There the Court, while holding Mapp not to be retroactive, preceded that conclusion with the following observations at p. 13:

"Before proceeding further, it is necessary that the terms 'retroactive' and 'prospective,' as used in this opinion, be defined. A purely prospective opinion would be one in which the new rule of law is limited to the future only and not even made applicable to the case before the court. See, generally, Great Northern Railway Co. v. Sunburst Oil & Refining Co., 1932, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360. This is not the situation here, however, since the exclusionary rule in Mapp was applied to reverse Miss Mapp's conviction. Also, the recent Supreme Court decision in Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), applied Mapp where the seizure and trial were before the Mapp decision but the direct appeal was not until after Mapp was rendered. Thus, we

---

3. There is presently a conflict between the Circuits which has, as yet, been unresolved by the Supreme Court. See Hall v. Warden, 313 F.2d 483 (4th Cir. 1963); Gaitan v. United States, 317 F.2d 494 (10th Cir. 1963); and United States ex rel. Linkletter v. Walker, 323 F.2d 11 (5th Cir. 1963).

are only now concerned with whether or not Mapp applies to a conviction which had become final before that case had been decided, and we accordingly limit the terms 'prospective' and 'retroactive'."

Although we feel constrained to adopt the definition of the 5th Circuit on this point, we feel to do so in this specific fact situation would beg the question. Therefore, some preliminary discussion seems in order.

Again, it would be well to compare the Gaitan situation and that which is before us now. In Gaitan, the Court was concerned, as it was in United States v. Walker, supra, only with a case which had gone to final judgment prior to Mapp.[4] The instant case is one, or perhaps two, steps removed from that procedural finality. Here, the jury returned a verdict before the Mapp decision, but sentence was not imposed—nor were motions for a new trial or to suppress the evidence disposed of—until after Mapp. Clearly, then, under almost any conceivable definition of finality, the judgment here was not final at the time Mapp was handed down. The precise question before the Court, therefore, is whether the application of Mapp to a case which had not reached final judgment at the time Mapp was decided is constitutionally required. To phrase the question in another way, is an application of Mapp to a case which had not reached final judgment before Mapp was decided retroactive?

The resolution of this precise question is essential here, for if an application of Mapp to the instant factual situation were considered to be retroactive, we would not be required to make an independent determination of the question— even if the Colorado Supreme Court determined that Mapp was applicable here but erroneously applied it. If this were the situation, this Court would not be faced with a constitutional question, for, by virtue of Gaitan, the Colorado Supreme Court would not have been acting under constitutional compulsion. As noted above, habeas corpus would, therefore, not lie here. If, on the other hand, an application of Mapp to this case were not considered to be retroactive, we are compelled to make an independent determination of the question by Townsend v. Sain, 372 U.S. 293, 312–319, 83 S.Ct. 745, 756–760, 9 L.Ed.2d 770 (1963). And see Ker v. California, 374 U.S. 23, 34–35, 83 S.Ct. 1623, 1630, 10 L.Ed.2d 726 (1962).

As indicated in the quotation from United States v. Walker cited above, Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1962) would appear to be controlling here. Indeed, the instant case would seem to be stronger than Ker. There, the conviction was obtained before Mapp, and it was affirmed about nine weeks after Mapp, the California Court holding that the intervening decision of Mapp did "not justify a change in our original conclusion." 195 Cal. App.2d 246, 257, 15 Cal.Rptr. 767, 773 (1961). The United States Supreme Court, without discussion of retroactivity, merely observed that "This case raises search and seizure questions under the rule of Mapp v. Ohio, 367 U.S. 643 (1961)." Ker v. California, 374 U.S. 23, 24, 83 S.Ct. 1623, 1625, 10 L.Ed.2d 726 (1962). Respondent's arguments, nonetheless, seem worthy of at least some discussion.

Respondent urged at the hearing in oral argument that Mapp should not be applied to any case in which the prosecution obtained its evidence by means of a search and seizure that took place prior to Mapp even though the trial might not have taken place until after Mapp. The argument in favor of this position is that any other rule would be unfair to police officers who relied on Wolf v. Colorado.

4. Gaitan's original conviction was affirmed, 252 F.2d 256 (10th Cir. 1958), and his application for certiorari was denied, 356 U.S. 937, 78 S.Ct. 779, 2 L.Ed.2d 812 (1958) several years before Mapp was de- cided. The decision which involved a determination of the retroactive application of Mapp came on Gaitan's third proceeding for relief under 28 U.S.C. § 2255.

We find this position untenable, and, in fact, apparently, the Colorado courts have themselves rejected it, as evidenced by the fact that a Colorado trial court suppressed evidence obtained from the same searches and seizures contested here in a separate and subsequent criminal case. Moreover, we find it difficult to sympathize with police officers who conducted illegal searches and seizures in reliance on Wolf. Mapp v. Ohio did not change the substantive law as to what constitutes an illegal search and seizure; it declared unconstitutional the *use* of evidence in a trial which had been obtained by such an illegal search and seizure. We find it difficult to accept an argument made in the name of fairness which would condone actions of police which are declared by state law to be illegal—and which were illegal both before and after Mapp. Finally, such a position would purport to empower a court to ignore what has been specifically declared to be the law of the land, a position which, to our knowledge, no court has ever taken.

Respondent also argued, and quite persuasively so, that a decision in this case should not turn on such a technicality as the exact point in time at which sentence is imposed on a prisoner. While criticizing the conclusion of the Fourth Circuit in Hall v. Warden, 313 F.2d 483 (1963) (holding that Mapp v. Ohio is retroactive), respondent commends the decision inasmuch as it wholly rejects any technical distinctions that might be made regarding the purely fortuitous circumstances that bring one case to trial a little later than another. But this argument can lead only in two directions. Either it must lead to the conclusion that Mapp should be applied retroactively, a conclusion which has been rejected in this Circuit in Gaitan, or it must lead to

the conclusion that Mapp should not be applied to any case in which the prosecution obtained its evidence prior to the announcement of Mapp, a position which we have found good reason to reject above.

■ Granting therefore that any decision which applies Mapp to cases which involve evidence seized prior to the date that case was decided will involve some technical distinctions, it seems logical to apply a rule which will involve a technical distinction which has some legal significance above and apart from a mere date. In our view, such a distinction, which has itself some independent legal significance, is the final judgment. Whether final judgment in this context should mean a case in which sentence had been imposed prior to Mapp but which was pending on appeal at the time Mapp was decided we need not now decide.[5] Suffice it to say that we think Mapp applicable to a case, such as we have here, in which sentence was not imposed until after the Mapp decision was entered. Such a position has support, even among those who have held, as this Circuit has done, that Mapp is not retroactive. A brief sampling of some of these authorities is set out below.

In Commonwealth ex rel. Wilson v. Rundle, 194 A.2d 143, 147 (Pa.1963), the Court, while refusing to apply Mapp to judgments of sentence and convictions which became final prior to Mapp, noted that

"* * * it would seem only essentially fair and logical that the rule be applied retrospectively in two other situations: (a) to *all* cases where the allegedly unconstitutional search and seizure took place *prior* to Mapp but the motion to suppress the evidence was not made or the

5. In Commonwealth ex rel. Wilson v. Rundle, 194 A.2d 143, 147 (Pa.1963), the Court defined "final" as follows:

"'Final' in the sense that the time for perfecting an appeal to the state appellate court had not expired or that an appeal had been taken but not determined or that the time for seek-

ing a review by the U.S. Supreme Court had not expired or that a review by that Court was pending."
See also the quotation cited above in the text from United States ex rel. Linkletter v. Walker, 323 F.2d 11 (5th Cir. 1963) defining "retroactive" and "retrospective" in much the same way.

trial did not take place until *after* Mapp (Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; Commonwealth v. Cockfield, 411 Pa. 71, footnote p. 74, 190 A.2d 898, p. 900); (b) to *all* cases where not only the search and seizure took place *prior* to Mapp but where the conviction and the judgment of sentence had not become final at the time Mapp was decided (People v. Loria, 10 N.Y.2d 368, 223 N.Y.S.2d 462, 179 N.E.2d 478; People v. O'Neill, 11 N.Y.2d 148, 227 N.Y.S.2d 416, 182 N.E.2d 95; State v. Smith, 37 N.J. 481, 181 A.2d 761; State v. Valentin, 36 N.J. 41, 174 A.2d 737; Commonwealth v. Spofford, 343 Mass. 703, 180 N.E.2d 673).

A Professor of Evidence, who has likewise opposed a retroactive application of Mapp, noted in an article that it would be proper to apply it to cases such as that at bar:

"Convictions already had with the aid of illegally obtained evidence present a difficult problem. In cases already decided in which there was still time to appeal and proper objection was made below, a reversal and new trial is, of course, required by Mapp. Courts might well ignore the failure to make a proper objection in cases tried before, but decided on appeal after, Mapp. Most lawyers and judges would have considered the objections pedantic and there are few cases which fall into this category." Weinstein, Local Responsibility for Improvement of Search and Seizure Practices, 34 Rocky Mt.L.Rev. 150, 171 (1961).

"In view of the firmness of the Wolf rule, it is not likely that objection to the introduction of illegally obtained evidence was consistently made." Id., note 113 at p. 172.

In addition to the cases cited above and those cited in the quotations above, see State v. DelVecchio, 149 Conn. 567, 182 A.2d 402 (Conn.1962); State v. Fahy, 149 Conn.. 577, 183 A.2d 256 (Conn.

1962); State v. Evans, 78 N.J.Super. 437, 189 A.2d 57 (App.Div.1963); and Louisiana ex rel. Miles v. Walker, 222 F. Supp. 975 (E.D.La.1963).

Similarly, many of the courts which have held Mapp to be inapplicable, because not retroactive, to the cases before them, have phrased their decisions in terms of final judgments. Thus, in Gaitan, the Court said at p. 497, of 317 F.2d:

"We find nothing in Elkins, Rios, or Mapp which says whether those decisions should be applied retroactively or prospectively. The Supreme Court was concerned with the cases then before it and the question of the application of those decisions to *cases which had previously gone to final judgment was not presented.*" (Emphasis added)

And at p. 499 the Court noted that "No more reason exists for upsetting a *final judgment* because of a decisional change than exists when the basic law itself is changed." Similar expressions are found in other cases. For example in Louisiana ex rel. Miles v. Walker, 222 F.Supp. 975 (E.D.La.1963) the Court said at p. 978:

"Mapp is not to be applied retroactively. The exclusionary rule contained therein does not apply where the prosecution relied on Wolf v. People of State of Colorado, 338 U. S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, the law of the land prior to Mapp, and obtained a conviction that *had become final before Mapp.* United States ex rel. Linkletter v. Walker, et al. (5 Cir.) 323 F.2d 11; Commonwealth ex rel. Wilson v. Rundle, Pa., 194 A.2d 143; Gaitan v. United States, (10 Cir.) 295 F.2d 277." (emphasis added).

█ The failure of Peters to object to the admission of evidence during the trial or to move for its suppression before trial likewise should not be fatal here to his petition for relief. He raised the question at the first available opportunity in two different ways before sentence was imposed. No more could rea-

sonably be expected of him. As stated in Walker v. Peppersack, 316 F.2d 119 (4th Cir. 1963) at p. 125:

" * * * contemplating both federal and state law, it would have been plain to any lawyer that raising, either at trial or on appeal, a question of the admissibility of this evidence might well have been characterized as frivolous—certainly futile as a practical matter."

And in the United States v. Rundle, 219 F.Supp. 549 (E.D.Pa.1963), which is more nearly analogous on its facts to the instant case, the Court said at p. 555:

"What is before me, therefore, on habeas corpus, is a claim of an important constitutional right which was raised in the State Courts as soon as it was recognized by the Supreme Court of the United States and this at a time when the case still was within the jurisdiction of the trial court on the motions for new trial and in arrest of judgment and in the petition to quash the search warrant and suppress the evidence seized thereunder. It was pressed in the trial court and on appeal. Having been rejected there in direct attack it is properly raised here on habeas corpus.

"The accident of time made it possible for the petitioner to press his newly recognized constitutional rights at every level of the State court system. In these circumstances I hold that he stands within the protection of the Mapp case, however narrow its reach may ultimately be defined."

Indeed, it would seem senseless for "the client whose counsel took a groundless objection [to] get(s) the benefit of the later (Mapp) change in law while the client whose lawyer refrained from mouthing a meaningless objection is prejudiced because his lawyer took the correct position." People v. Friola, 11 N.Y.2d 157, 227 N.Y.S.2d 423, 182 N.E.2d 100, 102 (1962) (dissenting opinion). But see People v. Farrara, 46 Cal.2d 265,

294 P.2d 21 (1956); People v. Friola, 11 N.Y.2d 157, 227 N.Y.S.2d 423, 182 N.E. 2d 100 (1962). Moreover, as noted above, the Colorado Supreme Court, although it briefly discussed the question, did not make a decision on that point. Under the circumstances, therefore, we find that Peters' failure to raise the question before or during trial does not prejudice his petition here.

### III. Conclusion.

■ Having concluded that petitioner is properly before the Court and that Mapp v. Ohio is applicable to his case, this Court feels compelled to consider petitioner's allegations on their merits. As has been previously noted, evidence from the same searches and seizures assailed here was held inadmissible in a different and subsequent criminal proceeding brought against petitioner. In this respect, the circumstances here bear some resemblance to those in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). In Fay, the confessions of Noia's alleged co-conspirators, which had been obtained under similar circumstances to those under which his had been obtained, had been held to be coerced and their convictions had consequently been reversed. Noia, however, had not prosecuted a direct appeal in the state courts, and the State refused to receive evidence of coercion in a collateral proceeding and also declined to consider the evidence taken at the proceedings of his co-conspirators. The parallelism to the present case stops at this point, since, for purposes of appeal on a 28 U.S.C. § 2254 petition to the United States Supreme Court, the state stipulated that the confession had in fact been coerced. What is relevant here from Fay is that the U.S. Supreme Court took cognizance of the existence of the evidence that had been taken in the other proceedings. We think we may do at least that much here. Surely the existence of testimony relating to the same searches and seizures with which we are concerned here constitutes a special circumstance that makes desirable, if it does not indeed compel, an evidentiary hearing in this case.

Even more compelling than the existence of the testimony described above are the mandates set out in Townsend v. Sain, 372 U.S. 293, 312–319, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and see Ker v. California, 374 U.S. 23, 34–35, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). In Townsend, the Court explicitly held at 372 U.S. p. 312, 83 S.Ct. at p. 756 that:

"Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a *full and fair evidentiary* hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is required unless the state-court 'trier of fact has *after a full hearing* reliably found the relevant facts." (Emphasis added.)

The Court goes further to articulate "controlling criteria for the guidance of the federal habeas corpus courts." At p. 313 of 372 U.S., at p. 757 of 83 S.Ct. Mr. Chief Justice Warren said:

"We hold that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing."

In elaboration of these criteria, the Court at p. 317 of 372 U.S., at p. 759 of 83 S.Ct. further said in part:

"If, for any reason not attributable to the inexcusable neglect of petitioner, see Fay v. Noia, post, [372 U.S.] p. 438 (Part V) [83 S.Ct. p. 848, 9 L.Ed.2d 837], evidence crucial to the adequate consideration of the constitutional claim was not developed at the state hearing, a federal hearing is compelled."

Under the unusual circumstances of this case—especially the facts that petitioner raised the constitutional question presented here at the first available opportunity before sentencing and the denial by the trial court of petitioner's request for a full hearing—we see no alternative, in light of the law cited, to ordering an evidentiary hearing.

Though having no bearing on the instant case, it may properly be noted that in Hernandez v. People, 385 P.2d 996 (Colo.1963), which presented the first opportunity for a comprehensive construction of the impact of Mapp on Colorado law, the Colorado Supreme Court established standards and procedures for evidentiary hearings in matters which involve questions such as those now before this Court. There seems little doubt that, should such a question as we are concerned with in the instant case arise today in Colorado, a trial court would order an evidentiary hearing such as this Court has been compelled to Order in this case.

One additional circumstance urgently suggests that we Order a hearing. Petitioner here is presently on probation for a period which will expire within six months. After that period of time, the questions which he presents will have become moot and he will have no standing to raise them here. Thus, though we would prefer to enter an Order which would enable the Colorado courts to consider this question squarely before we make our own independent determination, the shortness of time makes such a procedure a practical impossibility. Accordingly, it is

ORDERED that this matter be set down for a full evidentiary hearing before this Court.